THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ANTHONY PELLICANO, Appellant.

Fourth Department, December 12, 1972.

*David N. Cohen* for appellant.

*Willard C. Best, District Attorney (Carlton K. Brownell* of counsel), for respondent.

DEL VECCHIO, J. P. Defendant has been convicted of burglary in the third degree and grand larceny in the third degree. The issue presented on this appeal involves the admissibility of defendant's confession made during custodial interrogation.

We are unable to agree with the dissenting Justice that the confession was inadmissible as a matter of law, because in our opinion defendant waived his right to have counsel present when he made his confession.

At the *Huntley* hearing a detective testified that while defendant was in custody on another charge he twice talked to defendant about the burglary, once at 11:30 A.M. and again at 4:00 P.M., each time advising him of his *Miranda* rights. The first time defendant did not want to discuss the matter; the second time he said that he would like to talk to his attorney. His attorney was called, came to the Sheriff's office and consulted with the defendant in private in the deputies' room. After this conference the attorney left the room, had a conversation with the detective, and left the building. As a result of that conversation the detective immediately entered the room and talked to defendant. He asked him if he had discussed the matter and his rights with his attorney. Defendant said that he had. He then asked what he had decided. Defendant replied that he had decided that he wanted to talk to him. Defendant then stated that he and another person broke into the United Church building and stole $800. The detective also testified that defendant was over 21 years of age, had been previously involved in other crimes and had prior court experience; that no force, threat, or promise was made to induce defendant to answer his questions.

On cross-examination three yellow sheets, Exhibits 1, 1a and 1b, were marked for identification. These contained the notes made by the detective of his conversations with the defendant and his attorney. They were requested by and given to defense counsel, but they were not offered in evidence; and the conversation between the detective and the attorney was not referred to on cross-examination and does not appear in the record. Since it was not had in the presence of defendant, the prosecutor did not ask for that conversation. However, a reasonable inference from all the proof is that the attorney told him that he had discussed the matter with defendant, had advised him of his rights and that defendant was willing to talk to the detective in the absence of counsel,

Defendant did not testify and offered no proof at the hearing to rebut such inference.

Upon this record the court found that defendant had been fully and completely advised of his rights, that he made a knowing and intelligent waiver of his rights, that the admissions were freely and voluntarily given and that they were admissible at the trial.

The record amply supports the factual findings that defendant knowingly and intelligently waived his constitutional rights. The dissent would reverse on the ground that there was no affirmative waiver, in the presence of the attorney, of defendant's right to counsel. For a waiver to be effective it must be established that there was " an intentional relinquishment or abandonment of a known right or privilege " (*Johnson* v. *Zerbst*, 304 U. S. 458, 464). Upon examination of the facts shown in the record it appears that while in custody defendant was given a full and effective warning of his rights. He was aware of his right to consult an attorney before being interrogated. He was given an opportunity to confer with his attorney and to have him present during the questioning. He did consult with his attorney and, immediately after his attorney had left him, was willing to be questioned in his absence. He was also aware of his right to remain silent and that anything he said could be used against him. In these circumstances, his express statement that he had decided to talk to the detective after he had been advised of his rights by his attorney, followed closely by the making of the confession, constituted an affirmative waiver of his right to have counsel present at that time. The constitutional safeguards laid down by *Miranda* v. *Arizona* (384 U. S. 436) during a period of custodial interrogation have been effectively met.

In *People* v. *Robles* (27 N Y 2d 155, cert. den. 401 U. S. 945), wherein the defendant's admissions may be regarded as prompted to a greater degree by statements and inquiries of a detective than were those in the present case, the Court of Appeals refused to hold such statements inadmissible. In that case, in response to an inquiry by a detective as to " Just what really happened? ", defendant blurted out the damning fact of the perpetration of the murder. His recital of the details of the crime proceeded with the detective interjecting a series of questions in the form, " Then what happened, Ricky? " Nevertheless, since defendant had just concluded a 20-minute consultation with his attorney, the court declined to hold inadmissible the statements made in the absence of counsel, which it character-

ized as " voluntary admissions of guilt " stating, " The People are not to be charged with violating a defendant's right to counsel when the opportunity to exercise that right has been fully and effectively extended to a defendant who then chooses to speak rather than remain silent." (p. 159).

*People* v. *Arthur* (22 N Y 2d 325), relied on by the dissent, is clearly distinguishable. There the police, with knowledge that defendant's attorney was at the police station, obtained one statement from defendant before he was given an opportunity to talk to his attorney, thus denying him assistance of counsel, and a second statement after the attorney had advised the police not to talk to defendant anymore, thus denying him the privilege to remain silent. Upon these facts the court held that since the police knew that defendant was represented by counsel, they could not question him in the absence of counsel.

In this case, defendant was not questioned before he talked to his attorney. It was after defendant had been given an opportunity to consult with his attorney privately, was advised by him of his rights, and chose to speak rather than to remain silent, that he made his admissions to the detective. There is no proof that the attorney wished defendant to make no statement or that he wished to be present during the questioning of defendant. In fact, the inference is to the contrary, or, defendant, immediately after consultation with counsel, made an informed, voluntary election to speak in the absence of counsel. Clearly, the right to assistance of counsel, which was denied to the defendant in *Arthur,* had been extended to the present defendant by the detective before obtaining the confession.

Furthermore, " *Arthur* did not lay down a rule that, *whenever* a suspect is represented by counsel, the police may not question him except in the presence of counsel. Indeed no case either in this State or in the Federal jurisdiction has gone so far " (*People* v. *McKie,* 25 N Y 2d 19, 26–27). " The assertion that once an attorney appears there can be no effective waiver unless made ' in the presence of the attorney ' is merely a theoretical statement of the rule. This dogmatic claim is not the New York law " (*People* v. *Robles, supra,* p. 158). " Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without compelling influences is, of course, admissible in evidence " (*Miranda* v. *Arizona, supra,* p. 478). A person in custody may waive his constitutional right to be represented by counsel and make a statement to the police. Upon the undisputed facts in this case it would be unreasonable and unrealistic to hold that defendant's voluntary confession

was inadmissible because made in the " absence " of counsel.

In our view, defendant knowingly, intelligently and voluntarily waived his right to be questioned in the presence of his attorney; the statements were legally obtained and therefore admissible in evidence.

Finally, at the trial the detective gave, without objection, substantially the same testimony that he had given at the *Huntley* hearing. In addition, the People called a private person who testified that she was in defendant's apartment after the burglary and heard defendant say that " they broke into " the United Church; that in her presence " they counted " $800; and that defendant said he got it from the United Church. These admissions were properly received in evidence over objection (*People* v. *Horman*, 22 N Y 2d 378; *People* v. *Parler*, 30 A D 2d 681).

Defendant rested at the close of the People's case.

In its charge the court instructed the jury that before they could use the confession or admissions made to the detective against the defendant they must find that his statements were given freely and voluntarily, that defendant had been warned of his *Miranda* rights, and that he knowingly and intelligently waived these rights and agreed to make a statement. There was no exception or request.

We conclude that defendant's guilt was established beyond a reasonable doubt and that there were no errors of law requiring a reversal.

Accordingly, the judgment should be affirmed.

CARDAMONE, J. (dissenting). Defendant, while in the custody of the Ontario County Sheriff on another charge, was questioned regarding two local burglaries committed several months previously. The chief county detective testified at the *Huntley* hearing that at about 11:30 A.M. on February 6, 1968 he asked the defendant about these two burglaries and the defendant " did not want to discuss it with me ". Later that same day, at about 4:00 P.M., he questioned the defendant again about these crimes in the Sheriff's office and after giving the defendant his *Miranda* warnings the defendant asked to speak to his attorney who was thereupon called and came to the Sheriff's office and went with the defendant into the deputies' room where he and the defendant had a private conversation. Before the attorney left, the chief detective had a conversation with him and then, he (the chief detective) states: " I went into the room where Mr. Pellicano was and I asked him if he had discussed this matter with his attorney and he stated that he had. I asked if he had talked over his rights and so forth and he said he had. I asked him what

he had decided. He said that he had decided that he wanted to talk to me ''. The defendant then gave the chief detective an oral statement regarding the details of the two burglaries. Following this testimony at the *Huntley* hearing, the trial court found that defendant's oral statement was voluntarily made at the trial. On the same testimony the jury, after a charge respecting the voluntariness of the defendant's statement, returned a verdict of guilty on the larceny and burglary charges against the defendant from which he appeals.

The defendant's privilege against self incrimination must be protected when the defendant is subjected to police interrogation while in custody at the station (*Miranda* v. *Arizona*, 384 U. S. 436). As the Court of Appeals stated in *People* v. *Arthur* (22 N Y 2d 325, 329), '' Once an attorney enters the proceeding, the police may not question the defendant in the absence of counsel unless there is an affirmative waiver, in the presence of the attorney, of the defendant's right to counsel [citation omitted]. There is no requirement that the attorney or the defendant request the police to respect this right of the defendant ''. Such right applies, however, only when the police have taken an accused into custody (*People* v. *Vella*, 21 N Y 2d 249) because '' the criminal proceeding commences with formal custody and, if an in-custody defendant in fact is represented by counsel, and the police know it, they may not question him in the absence of counsel '' (*People* v. *McKie*, 25 N Y 2d 19, 26). The majority conclude that these plainly stated constitutional protections against self incrimination while in custody do not mean what they so clearly say, i.e., that there may not be a waiver unless '' in the presence of counsel '' and an in-custody defendant who the police know is represented by counsel may not be questioned in counsel's absence.

The Fifth Amendment privilege does not bar voluntary statements (*People* v. *Kaye*, 25 N Y 2d 139; *People* v. *Torres*, 21 N Y 2d 49). Thus, where the oral statement given is '' spontaneous '', it is admissible against the defendant even though he was represented by counsel at the time. In *People* v. *Kaye* (*supra*) defendant's blurted-out statement of guilt to the police in the car on the way to the station, after he had spent two days in a room with a strangled 13-year-old victim, was held spontaneous and admissible. In *People* v. *McKie* (*supra*) a statement made by the defendant during the course of a heated altercation in the street with the police investigating the murder of an old lady in which he said, '' Sure, I did it, but you guys can't prove it '' (p. 23) was similarly held spontaneous and admissible.

*People* v. *Robles* (27 N Y 2d 155, cert. den. 401 U. S. 945), relied on by the majority, was also a " spontaneous " admission not a result of custodial interrogation. In that case the defendant blurted out the fact that he had " killed those two girls " in response to the inquiry, from a detective who had previously known him, " Rick, did you ever think it would wind up like this " (*People* v. *Robles, supra,* p. 158). The oral statement made by the defendant in the instant case, while in custody, in response to the plainly intended police interrogation cannot be construed as a " spontaneous" blurted-out or voluntary statement by defendant as it so clearly was in *Kaye, McKie,* and *Robles.*

The broad protection afforded citizens and spelled out in *Miranda* v. *Arizona* (*supra,* p. 444) has not been abrogated by the Court of Appeals in their recognition of " spontaneous " confessions where the facts clearly indicate such is the case.

Insofar as the majority view this as a " waiver " of the right to remain silent and the right to counsel, the facts do not prove this beyond a reasonable doubt. This defendant refused on two separate occasions to talk with the detective and it was only after his attorney left the building that the police officer obtained the defendant's confession. The majority find " a reasonable inference " that the attorney had told the detective that the defendant was willing to talk in the absence of counsel. Significant, in this connection, are the detective's notes which so indicate and upon which the majority make their inference. However, while in this same attorney's presence at the *Huntley* hearing and at the trial, and after the attorney had been handed these notes, the *detective did not so testify.* Thus, there is as strong an inference that such a conversation did not actually occur as indicated in the notes. The Supreme Court has stated " that ' courts indulge every reasonable presumption against waiver ' of fundamental constitutional rights and * * * ' do not presume acquiescence in the loss of fundamental rights ' " (*Johnson* v. *Zerbst,* 304 U. S. 458, 464).

I conclude, therefore, that this oral statement was involuntary as a matter of law and that its admission at the trial requires that the judgment of conviction be reversed and a new trial ordered.

MARSH, WITMER and MOULE, JJ., concur with DEL VECCHIO, J. P.; CARDAMONE, J., dissents and votes to reverse the judgment and grant a new trial in an opinion.

Judgment affirmed.