GARY D. GARDNER, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 7634

July 10, 1975                                    537 P.2d 469

*Robert N. Peccole,* Las Vegas, for Appellant.

*Robert List,* Attorney General; *Roy A. Woofter,* District Attorney, and *Dan M. Seaton,* Deputy District Attorney, Clark County, for Respondent.

**O P I N I O N**

By the Court, MOWBRAY, J.:

Gary D. Gardner pled guilty to the crime of second-degree murder and received a sentence of 99 years in the Nevada State Prison. The district court denied his post-conviction petition to set aside the guilty plea as involuntary. We affirm.

1. Gardner was arrested on October 9, 1967, for the fatal

shooting of Paul DeWeert. He was taken to the North Las Vegas Jail and held there for 5 or 6 days before being transferred to the Clark County Jail.

Gardner's nephews, ages 12 and 13, were also taken into custody by North Las Vegas police on October 9, 1967. The nephews were released on October 11, but later they were again taken into custody and held 3 days before being released on a writ of habeas corpus. Gardner was aware of the police action taken toward his nephews.

An indictment was returned on October 19, 1967, charging Gardner with open murder.

In late October, Gardner agreed, with the approval of his attorney, to take a polygraph examination regarding his involvement in the DeWeert homicide. Arrangements were made by counsel to have Mr. Leonard H. Harrelson, a well known examiner from Illinois, administer the test. Harrelson came to Las Vegas on November 4, 1967, and was prepared to administer the test to Gardner in a local hotel room. Gardner, however, then changed his mind, and he was transported back to the jail. Later in the day, after being visited by his wife and his attorney, Gardner agreed to take the test upon certain conditions. He was then returned to the hotel room. Before Harrelson started the examination, Gardner confessed to the shooting, claiming it was spontaneous and not premeditated. Harrelson did not recite the Miranda warnings prior to interrogation, and Gardner's counsel was not present when he confessed. The room where the examination was to be conducted, however, had been placed under electronic surveillance by the district attorney's office, and the phone was tapped. As a result of Gardner's confession, he agreed to plead guilty to second-degree murder.

Pursuant to negotiations, Gardner was to enter his plea on Monday, November 6, 1967. On Sunday, November 5, Gardner's sister Luana Jepson, had a chance meeting at a local bar with the deputy district attorney managing the case. The deputy threatened Gardner's sister by saying, "Well, I will tell you, the son-of-a-bitch better plead guilty tomorrow or I will see him get the death penalty and you and the rest of your family will be prosecuted." The following day, the day the plea was scheduled, Mrs. Jepson told Gardner of the deputy's statement. At court, Gardner refused to enter a guilty plea and was placed in the holding cell near the courtroom. According to Gardner, the same deputy district attorney then met with Gardner and, though apologizing for his conduct toward his sister, said, "But if you don't plead guilty, I will guarantee

you get gassed and your people, your family, Luana and her kids, will be charged and prosecuted for this crime."[1]

On November 7, 1967, Gardner entered a plea of guilty to the crime of second-degree murder. At the time the plea was entered, Judge Mendoza questioned Gardner thoroughly and repeatedly before he accepted the plea, and Gardner affirmatively represented to the court that no threats or promises were made and that his plea of guilty was free and voluntary and not the result of any threats or promises made to him or anyone else.

2. Gardner predicates his claim that his plea of guilty to second-degree murder was not voluntary on four different grounds.

He first argues that his plea was coerced because of threats to prosecute his sister and nephews unless he pled guilty. If such threats were in fact made, it does not necessarily follow that the guilty plea was coerced. To be entitled to relief, Gardner must show (1) that the threats were made, (2) that such threats did in fact influence him, and (3) that the influence was such that it amounted to coercion.

In determining whether or not Gardner was in fact coerced, the court may consider all the evidence, including the record taken at the time the defendant entered his plea of guilty.

In State v. Hansen, 441 P.2d 500, 503 (N.M. 1968), the defendant claimed that he " '. . . was threatened with charges being filed against his wife, if he did not plead guilty to the subject charge [armed robbery], . . .' " The Supreme Court of New Mexico held that this did not amount to coercion. The court said (441 P.2d at 503–504):

"The allegations fail, except by suggestion, to assert that the claimed threat influenced his plea. Allegations or statements in a motion merely suggestive of the possibility that a plea of guilty was not voluntarily and knowingly made are not sufficient as a basis for a hearing. Nor are vague or conclusional charges sufficient. Williams v. United States, 367 F.2d 143 (5th Cir. 1966); State v. Lobb, 78 N.M. 735, 437 P.2d 1004 (1968); State v. Williams, 78 N.M. 431, 432 P.2d 396 (1967); State v. Crouch, 77 N.M. 657, 427 P.2d 19 (1967); State v. Guy, 79 N.M. 128, 440 P.2d 803 (Ct.App. 1968); State v. Sexton, supra [437 P.2d 155 (N.M.Ct.App. 1968)].

---

[1] The deputy was never called by the petitioner nor the State during the proceedings below.

". . . Even if we were to construe defendant's allegations as constituting a threat by someone in authority that charges would be filed against his wife, unless he pleaded guilty, and that he was thereby induced or influenced to so plead, still he would be entitled to no relief.

"Unless he knew his wife had committed some criminal offense, or at least he had substantial reason to believe she might be convicted of such an offense if so charged, he cannot be heard to say he was coerced into pleading guilty for fear she might be charged. If he knew she was guilty of some criminal offense, or had reason to believe she would be convicted of the offense if charged, and, to save her from being charged, he elected to plead guilty, and thus relieve the State of its burden to prove his guilt, he cannot now claim any right to a reversal of his conviction and sentence after having made this choice and after having become unhappy over his sentence or other subsequent developments."

A threat to prosecute a member of a defendant's family does not constitute coercion *per se*. The defendant must prove that the threat *in fact* coerced him into making the plea of guilty. The New Mexico court then said (441 P.2d at 505):

"As stated by the Supreme Court of New Mexico in State v. Daniels, . . . 438 P.2d 512 [, 514] (1968):

" '*We know of no better way to ascertain if a plea of guilty is voluntary and is understood by a defendant than for the judge to make inquiry of the pleader before accepting the plea.*' See Cranford v. Rodriguez, 373 F.2d 22 (10th Cir. 1967)." (Emphasis added.)

In the case of State v. Baumgardner, 443 P.2d 511 (N.M. App. 1968), the defendant contended that his plea of guilty was coerced because the prosecution threatened to file charges against the 17-year-old wife of his codefendant. In doing so, the court relied upon the record made at the time the defendant entered his plea and the fact that he was represented by an attorney. The court said (443 P.2d at 512):

"It appears from the record that defendant himself informed the court that he wished to plead guilty to the charge. Before accepting the plea the court inquired of defendant as to whether anyone had forced him to enter a plea to the charge or threatened him in any way, to which inquiry defendant answered 'No'. Defendant was further asked by the court, 'If you enter a plea here will it be free and voluntary on your part?' To this inquiry the defendant answered 'Yes, sir.'

"The trial court fully informed defendant as to the consequences, or possible consequences, that could follow a plea of guilty to the charge involved.

"At the time defendant entered his plea and prior thereto he was represented by competent counsel. This record, in our opinion, affirmatively shows that defendant's plea was voluntarily entered. State v. Decker, (Ct.App.) 79 N.M. 41, 439 P.2d 559 (1968); State v. McCain, (Ct.App.) 79 N.M. 197, 441 P.2d 237, decided May 3, 1968."

Gardner repeatedly stated that his plea was free and voluntary, and this is shown not only by the record made at the time his plea was received, but as well by the evidence received at the post-conviction hearing. The burden of proving his plea was involuntary lies with the appellant. United States v. Lester, 247 F.2d 496 (2d Cir. 1957). The district judge was justified in determining that Gardner's claim of coercion was not sufficiently supported to overcome other evidence of record showing voluntariness.

Gardner argues as a second ground that his plea was involuntary because it was induced by promises made by the prosecution that were not kept. The first was a promise that the prosecution would pay Gardner's counsel fees, pay his back wages, and notify the press of his innocence. The promise was conditioned upon Gardner's passing the polygraph test. However, his confession relieved the prosecution of any obligation under the agreement. Gardner further alleges that the district attorney promised to appear on his behalf at Gardner's first parole hearing, but failed to do so. From the testimony taken below, it is clear that any such indication on the part of the district attorney came *after* the plea of guilty and *after* Gardner was sentenced, and therefore could not have induced his plea. Gardner also claims that the district attorney's office promised to recommend a 10-year sentence and that he was influenced to plead guilty for this reason. According to the testimony of Mr. Franklin, the district attorney, there simply never was any such promise.[2]

Gardner suggests as a third ground that his confession was obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966). Gardner was represented by counsel of his choice, his

[2]Judge Mendoza's canvass when he took Gardner's plea made thorough inquiry in this area.

counsel wanted the polygraph test given, and counsel was present in the hall or in the adjoining room when Gardner confessed. Gardner was permitted to talk to his attorney whenever he wished. Mr. Harrelson simply asked Gardner if he was ready to talk to him, and Gardner said, "Yes; what do you want to know?" Mr. Harrelson then asked if the shooting was spontaneous or premeditated. Gardner replied that it was spontaneous.

In People v. Pellicano, 338 N.Y.S.2d 831 (1972), the defendant had been given the Miranda warning twice. The last time, he told the officer he wanted to see his lawyer. His lawyer was called and came to see him. After defendant talked to his lawyer in private, the attorney left. The officer then asked defendant what he had decided. Defendant replied that he had decided to talk to the officer. Defendant then confessed. The court held (338 N.Y.S.2d at 834) that under such circumstances "[T]he constitutional safeguards laid down by Miranda v. Arizona [cite omitted] during a period of custodial interrogation have been met."

The situation in the case at bar is similar to the circumstances in People v. Pellicano. Here, Gardner's counsel was available, and the entire episode was at the instance and request of the defense.

The final argument is that Gardner's plea was coerced because he feared the death penalty and that, since the death penalty, in effect at the time, was unconstitutional, then his plea was obtained in violation of his constitutional rights. The argument is without merit. Conger v. State, 89 Nev. 263, 510 P.2d 1359 (1973).

The order of the district court denying Gardner's petition for post-conviction relief is affirmed.

GUNDERSON, C. J., and BATJER, ZENOFF, and THOMPSON, JJ., concur.