Hasan Tashin AGTAS, Petitioner,

v.

Harol WHITLEY,* Warden; Brian McKay, Attorney General, Respondents.

No. CV–R–85–558–ECR.

United States District Court, D. Nevada.

June 17, 1986.

---

12. The Court notes that the informed consent form stated that compensation was not provided for non-negligent injury.

* Harol Whitley, Warden of the Nevada State Prison, is hereby substituted for George Sumner, Warden, pursuant to Fed.R.Civ.P. 25(d).

Oscar Goodman, Annette Quintana, Goodman, Terry, Stein & Quintana, Las Vegas, Nev., for petitioner.

Brian McKay, Atty. Gen. by David F. Sarnowski, Deputy Atty. Gen., Carson City, Nev., for respondents.

## MEMORANDUM DECISION AND ORDER

EDWARD C. REED, Jr., District Judge.

Petitioner, an inmate at the Nevada State Prison, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He contends that his Sixth Amendment right to effective assistance of counsel and his Fourteenth Amendment due process rights were violated. Petitioner had been charged in State District Court for Douglas County with sexual assault and attempted sexual assault on a five-year old girl. He pleaded not guilty at his arraignment and personally, as well as through his attorney, waived his right to a preliminary hearing. The waiver was made after the Judge had advised Petitioner that the purpose of a preliminary hearing was to determine probable cause that an offense had been committed and that he was the one who had committed it. The Judge further informed Petitioner that at a preliminary hearing he could see and hear the State's witnesses and his attorney could examine them.

An associate of Petitioner's attorney represented him at a change of plea proceeding some three months later. The change resulted from a plea bargain agreement. Petitioner agreed to plead nolo contendere to lewdness with a child under the age of fourteen. In return, the two more serious Douglas County sexual assault charges would be dropped and, in addition, the Carson City District Attorney agreed not to prosecute Petitioner in connection with a lewdness complaint involving a ten-year old girl. The State indicated that it made the agreement because its case rested largely on the competency and credibility of the five-year old victim of the Douglas County offenses. Although she was able to recount to a psychologist, on videotape, what had happened, the prosecutor stated that it was uncertain the court would admit into evidence the testimony of such a young child.

The Judge questioned Petitioner as to his understanding of the plea bargain agreement, which was evidenced by a signed written memorandum. His attorney represented that the nolo contendere plea was motivated in part by the possibility of a civil lawsuit against him based on the same purported offenses. Also, although Petitioner did not admit guilt, his attorney said that Petitioner recognized that a jury could find him guilty based on the available evidence. The attorney noted that numerous discussions had been held with Petitioner, who had viewed the videotape and read reports on the incident. As a result of the discussions and review of the evidence, a preliminary hearing was not deemed necessary by Petitioner or his attorneys.

Petitioner himself told the Court that he knew the maximum penalty on the lewdness charge would be ten years in prison and a $10,000 fine. The Judge repeated the potential penalty. In addition, he stated the specific elements that the State would have to prove to convict Petitioner of the charge. Petitioner affirmed that he understood what those elements were. He also acknowledged that he understood that the Court would treat his nolo contendere plea as a guilty plea. The Judge told him that, if Petitioner persisted in the proposed plea change, it was very likely the Judge would revoke his bail and put him in jail. Petitioner answered that he understood. He also was told by the Court that in all probability he would be sentenced to Nevada State Prison for a term of up to ten

years. The Judge stated that it was unlikely that he would grant probation, even if the Department of Parole and Probation recommended it. Petitioner said that he understood, and still wanted to plead no contest (nolo contendere). The Court made clear that a prison term was very probable, because of the nature of the offense against a five-year old child. Petitioner repeated that he wanted to plead no contest.

In answer to the Judge's questions, Petitioner indicated that he understood that the proposed change of plea would be deemed a waiver of his right to a speedy and public jury trial, of his right to confront and cross-examine the witnesses against him, and of his privilege against self-incrimination. The Judge outlined certain civil rights that would be lost by reason of being convicted of a felony. Petitioner said that he understood.

When Petitioner denied guilt of any sexual offense against the child, the Court asked the prosecutor to disclose the kind of evidence that was available. The prosecutor said that the Sheriff's office had been contacted by the child's mother, who reported that something had happened. The child then told a Sheriff's investigator what the Petitioner had done to her. Further investigation with a friend of the victim's family revealed that a ten-year old girl in Carson City also purportedly had been abused by Petitioner. The Sheriff's investigator interviewed at length the ten-year old. A psychologist then was hired by the Douglas County District Attorney's office. The videotape was made by the psychologist and the five-year old victim, with the aid of a red flag (bad touch), green flag (good touch) approach and anatomically correct dolls. The little girl placed the dolls together in the manner that Petitioner had been in contact with her, and said that it was Petitioner who had so touched her. The tape was twenty to twenty-five minutes long. A doctor had examined the girl several days after the incident and had found redness, but couldn't declare whether it had resulted from penetration.

The Court questioned Petitioner concerning the evidence. Petitioner verified that he had heard the prosecutor's rendition of the evidence and also had read the police reports. The Judge then insisted that Petitioner (and not his attorney) tell why he persisted in pleading nolo contendere, which would be treated as a guilty plea. Petitioner responded: "The reason I pled no contest is because the other accusation has a punishment of life sentence and that's the reason why, your Honor." In answer to further questioning by the Court, Petitioner said that he agreed with his lawyer that there was a substantial likelihood he would be convicted of the sexual assault charges if the little girl testified. He stated that he had fully discussed the case with his lawyer and was satisfied with his representation. Petitioner affirmed his understanding that he would be waiving any defense to the action by pleading nolo contendere.

The Judge said: "You are not going to have the opportunity even to confront this five year old girl on the witness stand either at the preliminary hearing or here in trial. Do you understand that?" Petitioner said that he understood. The Court then declared that whether the psychologist or the five-year old even could testify at trial were issues that would have to be resolved if Petitioner went to trial. If such testimony were held to be inadmissible, the Judge said, the case would be dismissed. Petitioner stated that he understood. Nevertheless, he reiterated that he still wanted to plead no contest. Petitioner said that he was changing his plea freely and voluntarily and that no one had threatened him or made any promises to him. The Judge then asked, "Again, you understand you can be subject to the full ten years in the State Prison?" Petitioner said that he understood.

The Court then specifically asked Petitioner: "You are waiving the right to have this matter remanded for a preliminary hearing so you could hear this girl testify; is that correct?" The answer was, "Yes."

In response to a further question, Petitioner indicated that he understood that evidence of the purported Carson City offense might not be admissible in the case in which he was changing his plea. When Petitioner told the Court that he was following his lawyer's advice, the Judge informed him that the final decision was his own and should be based on the evidence against him. Petitioner said that he still felt that the correct decision would be to plead nolo contendere. The Court accepted that plea, revoked Petitioner's bail and set the case for sentencing.

A sentencing proceeding was held some two and one-half months later. Petitioner was represented by his original attorney, rather than the associate who had been present for the change of plea. After pointing out that Petitioner continued to deny having committed any offense, his lawyer called two witnesses. They testified that Petitioner had babysat their small children and that they still trusted him completely.

The Court then invited Petitioner to say anything he wished. He reiterated his innocence. Nevertheless, he affirmed that he still wanted to plead no contest. Petitioner again acknowledged his fear that he might be convicted of a more serious offense with a potentially longer prison term, if the little girl testified. The Judge reminded Petitioner that he had not yet determined whether the five-year old child was even competent to testify. Petitioner repeated that he wanted to plead no contest. He then was sentenced to a term of ten years in the Nevada State Prison.

Six months later a different lawyer filed, on Petitioner's behalf, a motion to modify sentence or, in the alternative, to permit withdrawal of his plea. The ground alleged was that the Court had been acting under mistaken belief and misapprehension of the facts when it had sentenced Petitioner. The attorney pointed out that Petitioner had been born and raised in Turkey and had had no prior dealings with the criminal justice system in the United States. He

had understood his original lawyer to say that so long as Petitioner maintained his innocence, he would be brought to trial. Therefore, he had pleaded not guilty at his arraignment. However, when the associate counsel took over the representation of Petitioner, he had urged Petitioner to change his plea to no contest. One of the motivations had been the fear of civil liability.

Counsel explained Petitioner's position. It was claimed that Petitioner became confused when the Judge said that the plea of nolo contendere would be treated as a guilty plea. Petitioner deemed this to be contradictory of his persistent denials of having committed the offenses. He had asked his attorney to arrange a preliminary hearing, and couldn't fathom how his right to such a hearing could be waived by stipulation between attorneys. Further, the prosecutor's mention of the purported lewdness offense in Carson City (no formal charge ever was made) may have caused the Court to misapprehend the facts of the Douglas County case before it. In addition, the prosecutor had led the Judge to believe that the victim's mother was interested in obtaining the conviction of Petitioner, yet she never seemed to keep appointments with the prosecutor. The mother knew that Petitioner recently had won a $100,000 jackpot, and she may have been motivated to press the charges as a means of obtaining money from him.

The attorney went on to point out that a psychological evaluation of Petitioner revealed that he is unusually trusting. This caused him to sign papers he didn't understand, for he had great faith in the system of justice. Further, the attorney argued, Petitioner had been heavily medicated with a tranquilizer at the change of plea hearing.

At the hearing on the motion, Petitioner's new attorney stated that Petitioner's two former attorneys were friends and former colleagues of his. Yet, he wished to point out that Petitioner maintained that his original attorney had told him on a

number of occasions that he would receive a trial by reason of his steadfast denial of guilt in conjunction with a no contest plea. In addition, that attorney had led him to believe there would be a preliminary hearing first. The financial motivation of the victim's mother (she allegedly had an expensive cocaine habit) had not been made known to the Court. The combination of physical stress, mental fatigue and a heavy dose of tranquilizer had caused Petitioner to agree to things he didn't understand in the course of the Court's canvass of him during the change of plea proceeding.

Petitioner's affidavit in support of the motion charged his original attorney and associate attorney with unethical conduct. The former allegedly told Petitioner that the State Gaming Commission was going to file charges to get back the jackpot Petitioner had won. Since Petitioner was in jail at the time, he signed a power of attorney in favor of the attorney. The latter then withdrew all the money in Petitioner's bank account and deposited it in his own. Later, Petitioner learned that the Gaming Commission never had threatened to file charges or to seize his money. The attorney had not advised the Court of the extortion motivation behind the pressing of charges by the victim's mother, although Petitioner had told him of it. Nor did the attorney arrange a preliminary hearing and a doctor's examination of the victim, as Petitioner had requested of him. The attorney's investigator told Petitioner that if he followed the attorney's advice, a deal would be made to get Petitioner off with a six-month suspended sentence and no publicity. Petitioner so completely trusted his attorney that he unquestioningly followed his advice and signed papers proffered by him. Both the attorney and the victim's mother knew Petitioner would receive the ten-year maximum sentence before that sentence was pronounced by the Judge, according to the affidavit.

Petitioner addressed the Court during the hearing on his motion. He repeated how his attorney had assured him that there would be a preliminary hearing, after which the case probably would be dismissed. However, the attorney had told him that it would cost a great deal of money, both for legal services and for investigative work. Petitioner had paid him; then the attorney "got lost". His associate took over the case, but not before Petitioner was assured that nolo contendere is not a guilty plea. When Petitioner had come to court for the change of plea, he thought he was coming to a preliminary hearing.

In answer to the Court's questions, Petitioner claimed that he wasn't able to think or understand what was being asked and said at the court hearings because of the heavy dose of tranquilizer he had taken. The Judge pointed out that Petitioner had been in jail for thirty days before the sentencing hearing, so that he couldn't have taken any tranquilizers. Petitioner responded that he had so completely trusted his attorney that he did exactly what the attorney had told him. The Court then asked why Petitioner hadn't believed him (the Judge) when he said that a no contest plea would be treated as a guilty plea. The reply was: "I wasn't even listening to you, your Honor. I wasn't even listening to you.... In order for me to show my innocence, I have to follow what my attorney tells me...."

The Judge stated his understanding that the motion before him was predicated on three grounds: (1) Petitioner felt that his counsel had misled him, (2) he didn't fully comprehend what was occurring at the time he changed his plea, and (3) there was new evidence to present if a new trial or new sentencing proceeding were ordered. The Court denied the motion, after discussing the representation Petitioner had received and the thoroughness with which he had been questioned to assure that he was acting freely and voluntarily.

Petitioner appealed the denial of his motion to the Nevada Supreme Court, which decided the appeal from the record. It

ordered the appeal dismissed, in that the motion below had been without merit. The Supreme Court held that Petitioner's plea had been entered knowingly and voluntarily. It also found that the ten-year sentence had not resulted from a mistake of fact or consideration of improper evidence.

*Exhaustion of State Remedies*

The respondents argue that Petitioner has failed to exhaust State remedies with respect to his claim of ineffective assistance of counsel. Petitioner has responded by pointing out that the record considered by the Nevada Supreme Court included his affidavit (submitted in support of the motion to modify sentence or withdraw plea). It set forth factual allegations indicating not only inadequate representation but, also, false and misleading representations by counsel to Petitioner. Also, the District Judge, in ruling on the motion, had stated that one of its bases was the contention that Petitioner's counsel had misled him. This, too, was part of the record considered by the Supreme Court.

■■■ One way a habeas corpus petitioner may satisfy the exhaustion requirement is by providing the highest state court with an opportunity to rule on the merits of his claim. *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir.1982). The question of whether a nolo contendere plea was knowingly and voluntarily entered must be decided, in part, by determining whether there had been effective assistance of counsel. *Salkay v. Wainwright*, 552 F.2d 151, 153 (5th Cir.1977). The Nevada Supreme Court held that Petitioner's plea had been knowingly and voluntarily entered. The necessary implication is that he had received effective assistance of counsel. The fact that the Supreme Court did not specifically refer to the ineffective assistance claim in its order does not mean that it was not raised. *Smith v. Digmon*, 434 U.S. 332, 333–34, 98 S.Ct. 597, 598–99, 54 L.Ed.2d 582 (1978).

*Voluntariness of Plea of Nolo Contendere*

It is Petitioner's position that his no contest plea was not made voluntarily. He contends that the plea was fraudulently induced by his then attorney, who misrepresented its nature and effect. Allegedly, that attorney's intention was to appropriate Petitioner's funds to his own use. Petitioner insists that he was not aware that his plea would be treated as a guilty plea, thus depriving him of a preliminary hearing and trial.

■■■ Nolo contendere is a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty. *North Carolina v. Alford*, 400 U.S. 25, 35, 91 S.Ct. 160, 166, 27 L.Ed.2d 162 (1970). There is no requirement that there be a factual basis for the plea; an individual accused of crime may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit that he committed the offense with which he is charged. *Id.* at 36 n. 8, 91 S.Ct. 166 n. 8 and 37. In such a case, however, the record must reflect that the defendant himself (not just his attorney) understood the elements of the crime to which he was pleading. *Love v. State*, 99 Nev. 147, 659 P.2d 876, 877 (1983). The canvass of Petitioner by the Court during the change of plea painstakingly assured that he understood the elements that would have to be proved to convict him of the offense of lewdness with a child under the age of fourteen.

■■■ The test for the validity of a plea is to determine whether it represented a voluntary and intelligent choice among the alternative courses of action open to the defendant. *See Hill v. Lockhart*, —— U.S. ——, 106 S.Ct. 366, 368–70, 88 L.Ed.2d 203 (1985); *Wilkins v. Erickson*, 505 F.2d 761, 763 (9th Cir.1974). The making of such a choice generally requires the effective assistance of counsel. *See Salkey v. Wainwright, supra* at 552 F.2d 153. Where a defendant is represented by counsel during

the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether that advice was within the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart, supra* 106 S.Ct. at 368–70. The benefits received by Petitioner from the plea bargain were manifest, e.g., elimination of the possibility of a life term under the sexual assault charges, the Carson City District Attorney's agreement not to prosecute him for lewdness with a child under the age of fourteen, and less vulnerability to civil liability. Although it was not clear whether testimony of either the five-year old victim or the psychologist who interviewed her would be admissible against Petitioner, the advice to plead nolo contendere does not seem to be outside the range of competence demanded of criminal defense attorneys under the circumstances. *See McMann v. Richardson,* 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (counsel's misjudgment of the admissibility of a confession does not invalidate a guilty plea).

■■■■ A guilty (or no contest) plea by one under the influence of drugs is valid unless the drugs affected his capacity to understand the nature and consequences of the plea. *Anderson v. State,* 95 Nev. 625, 600 P.2d 241, 242 (1979). The burden is on the defendant to persuade the trial court by a preponderance of the evidence that he was so influenced. *Miller v. State,* 89 Nev. 561, 517 P.2d 182, 183 (1973). Petitioner has not sustained that burden. His reiterated desire to plead nolo contendere, stated at the sentencing where he could not have been under the influence of tranquilizers, belies his contention that he was under the influence when he earlier expressed the same desire at his change of plea hearing.

### Effective Assistance of Counsel

It is Petitioner's premise that he did not receive effective assistance of counsel with respect to his nolo contendere plea. He feels that the effect of the plea was misrepresented to him by counsel. In addition, the emptying of his bank account by his attorney acting under a power of attorney indicates an ulterior motive, he argues, for the Gaming Commission had not threatened to seize his jackpot winnings.

Petitioner raises the same issue as to the representation he received at the post-conviction proceedings. He claims that his new attorney told him, before being retained, that the new attorney had not seen the old attorney, and his associate, in some two years. There was no close friendship, the new attorney allegedly told Petitioner. Yet, in court at the hearing on the motion, the new attorney acknowledged that the three of them were friends and former colleagues in a district attorney's office. Petitioner asserts that he would not have hired the new attorney had he known the truth. Further, Petitioner claims that the new attorney failed to present evidence of the former attorneys' chicanery at the motion hearing, for the reason that he wanted to protect his friends. It was Petitioner himself who had to inform the Judge of the purportedly unethical and illegal treatment he had received, e.g., the misrepresentations as to the effect of the no contest plea. In Petitioner's estimation, the new attorney should have called the former attorneys as witnesses at the hearing, and required them to testify as to their misrepresentations to Petitioner.

■■■■ It is counsel's duty to advocate his client's cause; this is necessary to make the adversary system work. *Strickland v. Washington,* 466 U.S. 668, 688, 690, 104 S.Ct. 2052, 2065, 2066, 80 L.Ed.2d 674 (1984). An actual conflict of interest that adversely affects a lawyer's performance renders his assistance ineffective. *Id.* at 686, 104 S.Ct. 2064; *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). A possibility of conflict is insufficient. *Id.* As to the change of plea, the Judge's canvass clearly remedied any shortcomings in the representation Petitioner had received. The Court was dogged in establishing that Petitioner understood the effect of a no contest plea, including the waiver of the right to a preliminary hearing or trial. The same result

obtains as to the new attorney's representation of Petitioner in connection with his post-conviction motion to modify the sentence or permit withdrawal of the plea. Even if testimony of the former attorneys had established that they had deceived Petitioner or otherwise not made clear to him that the change of plea would result in a waiver of his right to establish his innocence at a preliminary hearing or trial, the result would not have changed. The Court made absolutely sure that Petitioner understood what rights he was waiving, both before accepting his plea and before imposing sentence. The case of *United States v. Rivera-Ramirez*, 715 F.2d 453 (9th Cir. 1983) is apposite. At page 458 the opinion reads:

> "Rivera-Ramirez contends his attorney misinformed and misled him in negotiating and tendering his plea and, in general, provided ineffective assistance. He stated at the plea hearing, however, that he was satisfied with the representation he had received. He also avowed his understanding of each of the rights he now contends were erroneously defined by his attorney. These solemn declarations made in open court carry a strong presumption of verity."

In Petitioner's case, the Judge emphasized that the ultimate decision whether to change the not guilty plea to nolo contendere had to be made by Petitioner himself, and not by his lawyer. The record reflects that Petitioner was aware of the options available to him.

When a convicted defendant claims ineffective assistance of counsel in connection with the plea process, he must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Hill v. Lockhart, supra* 106 S.Ct. at 368–70; *see also Church v. Kincheloe*, 767 F.2d 639, 643 (9th Cir.1985). The second prong is a prejudice requirement. It focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process; in order to satisfy this requirement Petitioner must show that there is a reasonable probability that, but for the derelictions of counsel, he would not have pleaded nolo contendere and would have insisted on going to trial. *See Hill v. Lockhart, supra* at 106 S.Ct. at 370–72; *Strickland v. Washington, supra* at 466 U.S. 696, 104 S.Ct. at 2069. This, Petitioner not only hasn't done, but cannot do, in light of the extensive canvasses by the Court before it accepted his change of plea. The record establishes that his plea of nolo contendere was entered at his own insistence after being fully informed of the rights he was waiving, including the right to a preliminary hearing or trial. Even if his lawyers' representation did fall below an objective standard of reasonableness, there is no reasonable probability that he would have pleaded otherwise if they had better counseled him. Petitioner has not sustained his burden of showing such ineffective assistance of counsel that his plea should be invalidated.

### Factual Basis for Nolo Contendere Plea

As a ground for habeas corpus relief, Petitioner points out that he never confessed nor did he ever make any factual statements which indicated that he committed the acts necessary to convict him of the offense for which he was sentenced. In fact, he asserted his innocence at every opportunity.

This issue has been discussed under the "Voluntariness of Plea of Nolo Contendere," above. *North Carolina v. Alford*, 400 U.S. 25, 35–37, 91 S.Ct. 160, 166–67, 27 L.Ed.2d 162 (1970) holds that there need be no factual basis for such a plea.

### Competence at Time of Change of Plea

A final ground for Petitioner's application for a writ of habeas corpus is that he was so under the influence of tranquilizing medication at the proceeding during which he changed his plea from not guilty to nolo contendere that the latter plea should be invalidated. The conviction of a defendant while legally incompetent would

violate due process. *Miller v. State*, 89 Nev. 561, 517 P.2d 182 (1973).

Petitioner went to a mental health clinic on November 16, 1983, complaining of insomnia, anxiety and nervousness. A doctor there prescribed Sinequan (doxepin). It is a psychotherapeutic or tranquilizing medicine. Petitioner has alleged that he took a double dose prior to his change of plea hearing on February 9, 1984, but that the associate attorney who represented him at the proceeding advised him not to mention it. A colleague of the prescribing doctor wrote to Petitioner's present attorney that: "It is entirely possible that if Mr. Agtas took a double dose of Sinequan, (200 mg) that his sensorium could have been clouded and his thinking impaired."

This issue also has been discussed under "Voluntariness of Plea of Nolo Contendere," above. The transcript of the change of plea hearing gives no indication that Petitioner had any trouble in understanding the questions he was asked or in formulating his answers. He seemed to be fully aware of what was transpiring. Also, as noted by the State District Judge, Petitioner had not taken medication prior to his sentencing hearing. The answers he gave there were consistent with those he gave at the change of plea hearing. There is no evidence to support a finding that he was under the influence of medication when he entered his plea of nolo contendere, nor at any other time during the proceedings.

*Evidentiary Hearing*

An evidentiary hearing has been requested by Petitioner. He contends that the facts underlying his constitutional claims are in dispute. For example, he feels that the extent of his nervousness, the use and effect of the tranquilizer medicine, and the representations made to him by his three former attorneys all are factual issues that cannot be resolved merely from the record.

This Court has made an independent review of the entire record herein in order to determine the sufficiency of the State Court findings. It is quite evident that Petitioner was provided a fair opportunity to fully develop the factual issues during the succession of State Court hearings. This statement is made with full recognition of the rule that where the contention has been made that a plea was involuntary and matters outside the record are involved (e.g., promises, threats, conflicts of interest) which, if true, could lead to setting aside the plea, an evidentiary hearing is required. *See Marrow v. United States*, 772 F.2d 525, 527 (9th Cir.1985); *Blackledge v. Allison*, 431 U.S. 63, 72–73, 97 S.Ct. 1621, 1628, 52 L.Ed.2d 136 (1977).

Where a plea is accepted by a court after a thorough canvass of the defendant, such as occurred in Petitioner's case, a later collateral attack on the conviction or sentence "will entitle a petitioner to an evidentiary hearing only in the most extraordinary circumstances." *Id.* at 80 n. 19, 97 S.Ct. at 1632 n. 19 (1977). Where the plea is pursuant to a plea bargain, such an attack necessarily asserts that the lawyers on both sides and the petitioner himself were untruthful in their responses to the Court's questions. *Id.* Even if a petitioner alleges facts which, if true, would justify relief, an evidentiary hearing need not be conducted on allegations which amount to no more than a bare contradiction of statements made when he entered his plea. *Dunn v. Wyrick*, 679 F.2d 731, 733 (8th Cir.1982).

The use and effect of the tranquilizer were discussed by the State District Judge and Petitioner at the hearing on the motion to modify sentence or permit withdrawal of plea. The same is true of the representations made by Petitioner's counsel to him that a nolo contendere plea was not an admission of guilt. Even if an evidentiary hearing were to be held and Petitioner were able to prove his factual allegations, his plea and sentence would not be subject to invalidation. The thoroughness with which he was canvassed by the Judge and the full opportunity he was afforded in State Court to develop all of his contentions negate any prejudice to him from the matters that would be explored at an evidentiary hearing. None of the circum-

stances that would require an evidentiary hearing exist here. *See Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963).

IT IS, THEREFORE, HEREBY ORDERED that Petitioner's request for an evidentiary hearing is DENIED.

IT IS FURTHER ORDERED that Petitioner's petition for a writ of habeas corpus is DENIED.