WILLIAM GARY ANDERSON, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 11780

September 27, 1979                    600 P.2d 241

*Bell, Leavitt & Green, Ctd.,* Las Vegas, for Appellant.

*Richard H. Bryan,* Attorney General, Carson City; *Robert J. Miller,* District Attorney, and *H. Douglas Clark,* Deputy District Attorney, Clark County, for Respondent.

626

## OPINION

By the Court, MANOUKIAN, J.:

This is an appeal from a denial of post-conviction relief following a judgment of conviction for the crime of robbery. NRS 200.380. Appellant was sentenced to a ten-year term for the robbery and, because the offense was found to have been committed with the use of a deadly weapon, appellant was sentenced to a consecutive ten-year term under this state's armed-with-a-deadly-weapon statute. NRS 193.165.[1] We are required

---

[1]NRS 193.165 provides:

1. Any person who uses a firearm or other deadly weapon in the commission of a crime shall be punished by imprisonment in the state prison for a term equal to and in addition to the term of imprisonment prescribed by statute for

to determine whether the trial court erred (1) in refusing to grant appellant's post-judgment motion to withdraw a plea of guilty,[2] and (2) in upholding the enhanced penalty in this factual context. We affirm.

*1.   The Plea.*

Appellant was charged in district court by information with the crime of armed robbery. Following arraignment he initially pled not guilty and, thereafter, pursuant to plea negotiations, was permitted by the court to change his plea to guilty. Imposition of the judgment and sentence was made on February 2, 1978. On December 27, 1978, appellant filed his petition for post-conviction relief under NRS 177.315-.385, contending, *inter alia,* that his plea of guilty was involuntary in view of his long-term and then-existent diabetic condition.

In Miller v. State, 89 Nev. 561, 517 P.2d 182 (1973), we stated:

> A conviction of an accused while legally incompetent violates due process and must be set aside. Krause v. Fogliani, 82 Nev. 459, 421 P.2d 949 (1966). It does not inevitably follow, however, that a guilty plea by one under the influence of narcotics is per se invalid. The influence of narcotics must be such as to affect his competency to stand trial or his capacity to understand the nature and consequences of his plea. Grennett v. United States, 403 F.2d 928 (Ct. App. D.C. Cir. 1968) . . . .

Miller v. State, 89 Nev. at 563, 517 P.2d at 182. During an evidentiary hearing, in addition to his own testimony, appellant introduced the testimony of the jail physician to the effect that, as a result of Anderson's diabetic condition, it was possible that appellant did not fully comprehend the significance and ramifications of the pleading process. On cross-examination, however, the doctor testified that it was possible that appellant did understand the nature and consequences of his

---

such crime. The sentence prescribed by this section shall run consecutively with the sentence prescribed by statute for such crime.

2.   This section does not create any separate offense but provides an additional penalty for the primary offense, whose imposition is contingent upon the finding of the prescribed fact.

3.   The provisions of this section do not apply where the use of a firearm or other deadly weapon is a necessary element of such crime.

[2]NRS 176.165 provides in part:

[A] motion to withdraw a plea of guilty or of nolo contendere may be made *only* before sentence is imposed or imposition of sentence is suspended; *but to correct manifest injustice* the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea. (Emphasis added.)

plea, particularly in light of the fact that his medical charts showed a rather constant and normal light sugar level.

The record reflects that appellant, 32, is a high school graduate, can read and write, has been previously convicted of three felonies, is familiar with the criminal process and has served time in prison. At the time of the entry of the guilty plea, which included a plenary canvassing by the trial judge, appellant acknowledged that he had the right to counsel at all stages of the proceedings and that he had in fact been represented by court-appointed counsel during the preliminary examination and was presently so represented. Appellant also stated that he understood the charge, was entering his plea freely and voluntarily, and that he had discussed the elements of the accusation, the state's burden of proof, and possible defenses with his attorney.

Moreover, the record shows that appellant was aware of the fact that he had the right to a speedy and fair trial by jury, including the right of confrontation, compulsory process and the right against self-incrimination. He is also shown to have understood the possible penalties, including the maximum and mandatory consecutive sentence because of the use of the firearm which use he freely admitted. Finally, during the sentencing proceedings approximately two months later, appellant indicated to the trial judge that there was no legal cause or reason why judgment should not be pronounced against him and that he had no statement to make toward mitigation of punishment.

Following the evidentiary hearing, the district court concluded that appellant's plea was entered freely, knowingly, and with a full understanding of its nature and consequences. We agree with that determination. Gardner v. State, 91 Nev. 443, 448, 537 P.2d 469, 472 (1975). There is no suggestion here that Anderson, at the time of the inquiry by the lower court, lacked the requisite mental capacity to enter an intelligent and competent guilty plea. As stated by one court:

> A person is mentally competent to enter a plea if he understands his right to constitutional due process and counsel, confrontation of witnesses, freedom from compulsion to testify, right to trial by jury, understands the nature of the charge against him, and is capable of understanding the legal consequences of guilt.

Cooper v. State, 531 P.2d 1187, 1192-93 (Idaho 1975).

Although appellant may have been affected in some way by his medical condition when he entered the guilty plea, we find nothing which would support his claim that he failed to understand the nature and consequences of his plea. *Cf.* Miller v. State, 89 Nev. at 562–63, 517 P.2d at 182–83 (proper plea found even though defendant under influence of heroin to some degree).

## 2. The Enhanced Penalty.

Appellant contends that when one deadly weapon is used in the commission of a crime, only the principal possessing it may be found guilty of violating a weapon enhancement statute. Here, the robbery occurred in an automobile; appellant was unarmed, and only his accomplice actually held a gun on the victim.

Although several states have considered this issue, there is far from a unanimity in the rulings. For example, Arizona has held that for "armed clauses" to be fully effective, when one deadly weapon is involved in the commission of a crime more than one principal may be subject to a weapon enhancement penalty. State v. Church, 504 P.2d 940, 944–45 (Ariz. 1973). *Cf.* Key v. State, 563 S.W.2d 184 (Tenn. 1978) (enhancement applies only to statute not requiring a firearm to be "in defendant's possession" and only if unarmed defendant knows his accomplice had firearm in his possession); Jenkins v. State, 509 S.W.2d 240 (Tenn.Crim.App. 1974) (knowing aider and abettor subject to same punishment as principal). *Contra,* People v. Walker, 555 P.2d 306 (Cal. 1976) (enhancement penalty limited in its application only to persons convicted of felonies who are personally armed); People v. Hicks, 484 P.2d 65 (Cal. 1971) (same).

The state contends that the participation of a defendant not actually in possession of the weapon by aiding and abetting the actual user in the unlawful use of the weapon, makes the former equally subject to the added penalty inflicted upon defendants who commit crimes through the use of deadly weapons. We agree.

Certainly, it is settled that penal statutes should be strictly construed and resolved in favor of the defendant when the applicability of such statute is uncertain. Sheriff v. Hanks, 91 Nev. 57, 60, 530 P.2d 1191, 1193 (1975); Smith v. District Court, 75 Nev. 526, 528, 347 P.2d 526, 527 (1959). Further, under strict rules of construction, criminal statutes may "not

be enlarged by implication or intendment beyond the fair meaning of the language used, and will not be held to include other offenses and persons than those which are clearly described and provided for . . . ." Richmond v. State, 100 S.W.2d 1, 2 (Tenn. 1937). *See* Sardis v. District Court, 85 Nev. 585, 460 P.2d 163 (1969); In re Laiolo, 83 Nev. 186, 426 P.2d 726 (1967). Nevertheless, we believe that the legislature intended the enhancement statute to apply under this set of facts.

Although the "armed clause" does not apply "where the use of a firearm or other deadly weapon is a necessary element" of the crime, NRS 193.165(3), there is no indication that the additional punishment may not properly be imposed upon an offender whose criminal acts were accomplished with the aid of a firearm or other deadly weapon which was held, as here, by an accomplice and equally culpable principal. The enhancement statute demonstrates generally the legislature's concern regarding the increased use of deadly weapons in the commission of crimes and its belief that such proscription will serve to deter persons from using weapons during the perpetration of certain crimes, in the hope that the possibility of death and injury will be reduced. *See* Key v. State, 463 S.W.2d at 186–87. When one of two robbers holds a victim at bay with a gun and the other relieves the victim of his properties, or, as in the instant case, the unarmed assailant has knowledge of the use of the gun and by his actual presence participates in the robbery, the unarmed offender benefits from the use of the other robber's weapon, adopting derivatively its lethal potential. *See* People v. Bush, 123 Cal.Rptr. 576, 582 (Ct.App. 1975), *expressly disapproved,* People v. Walker, 555 P.2d at 310.

This conclusion is consistent with our holdings involving interpretations of the term "possession." *See* Glispey v. Sheriff, 89 Nev. 221, 510 P.2d 623 (1973); *cf.* Alsup v. State, 87 Nev. 500, 489 P.2d 679 (1971) (circumstantial evidence sufficient to connect murder weapon with defendant). Those cases do not require actual or physical possession, but rather control. Therefore, in our view, the possession necessary to justify statutory enhancement may be actual or constructive; it may be exclusive or joint. Constructive or joint possession may occur only where the unarmed participant has knowledge of the other offender's being armed, and where the unarmed offender has, as here, the ability to exercise control over the firearm. It is noteworthy that during the change of plea proceedings, appellant acknowledged that the firearm was used to rob the victim.

*Cf.* Key v. State, 563 S.W.2d at 186 (defendant apparently did not know his accomplice had a firearm).

Giving the statute this construction complements the public policy which underlies it.

We affirm the conviction, judgment and sentences.

MOWBRAY, C. J., and THOMPSON, GUNDERSON and BATJER, JJ., concur.