WAYNE EDWARD WALTERS, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 20028

February 20, 1990                    786 P.2d 1202

---

[6]Pursuant to orders of this court entered September 14, 1988, and November 30, 1988, Senior Justice DAVID ZENOFF participated in this appeal in the place of then Chief Justice E. M. GUNDERSON. Additionally, pursuant to this court's order of November 30, 1988, replacement district judges were not appointed to sit in the stead of Justice SPRINGER and Justice MOWBRAY, who had earlier disqualified themselves.

[Rehearing granted October 25, 1990]

*Beury & Schubel,* Carlsbad, California, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, and *James Tufteland,* Chief Deputy District Attorney, and *Vicki Monroe,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Wayne Edward Walters was convicted of second degree murder with the use of a deadly weapon and was sentenced to life in prison with the possibility of parole. The life sentence was enhanced by imposition of a second, consecutive life sentence for use of a deadly weapon.

Following the dismissal by this court of Walters' direct appeal, Walters petitioned the district court for post-conviction relief in which he alleged numerous errors. An evidentiary hearing was held, following which the district court denied Walters' petition. On appeal, Walters raises numerous issues, two of which have merit. Therefore, we reverse Walters' conviction and remand to the district court for retrial.

### Facts

The facts underlying Walters' conviction stem from an argument he and his companion, Gregory Samson, had with the victim, Douglas Ueckert, at the Tumbleweed Inn, a bar in Sandy Valley, Nevada. The evidence at trial showed that on the night of

May 12, 1985, Walters and Samson had a heated argument with Ueckert about a car Walters had removed from Ueckert's property. The three men and several companions left the bar to settle the dispute outside, at which time Samson displayed a knife. Eventually, the men returned to the bar, after apparently settling their differences. Soon, however, the argument flared up again. This time only Walters, Samson and Ueckert left the bar. A short time later, the victim's wife, Diane Ueckert, found her husband in the parking lot bleeding from several stab wounds. Just prior to seeing her mortally wounded husband, Mrs. Ueckert encountered Samson on his motorcycle. Samson indicated that Ueckert had hit him in the head and hurt him. At the same time, Walters pulled up in a car and yelled to Samson, "let's go."

The next morning, without first obtaining a warrant, police officers from both Nevada and California converged on Walters' ranch, located on the California side of Sandy Valley, and arrested him. In accomplishing the arrest, the officers used a helicopter and, while circling Walters' home, used a bullhorn to order Walters and Samson to leave the house and walk to where other officers were waiting. Walters and his companion complied with the police directives, were given their *Miranda* warnings and were placed under arrest. Thereafter, Walters was transported to Barstow, California, by a police officer. During the course of that ride, which was approximately 100 miles, Walters made a statement to the effect, "How many times did I have to let him hit me in the back."

Following a jury trial, Walters was found guilty of second degree murder and sentenced to life with the possibility of parole. He also received an identical consecutive sentence as an enhancement for using a deadly weapon. Walters challenges his conviction on appeal from the trial court's denial of his petition for post-conviction relief.

## Discussion

Walters raises two issues in his petition for post-conviction relief which are meritorius and which, as to the first issue, warrants a reversal of his conviction.

First, because Walters' inculpatory statement was the product of an illegal arrest, the statement should have been suppressed. United States v. Maez, 872 F.2d 1444, 1456-57 (10th Cir. 1989). Walters was arrested in the morning following the murder of Doug Ueckert, which occurred late the night before. Testimony showed that upon arrival of law enforcement officers at the crime scene, Walters was immediately a prime suspect in the killing. Yet, for some unknown reason, the officers did not procure an arrest warrant from a magistrate. The Nevada police simply

coordinated their efforts with the California authorities and arrested Walters. Under the facts known to the investigating officers, a warrant could have been obtained prior to effecting Walters' arrest.

Walters was clearly arrested in his home without a warrant and absent exigent circumstances. *See* Payton v. New York, 445 U.S. 573 (1980). Additionally, the record does not reflect that Walters exited his home voluntarily. The police had a helicopter circling the house from which commands to exit the house were communicated by means of a bullhorn. Under these circumstances, we are unable to conclude that a reasonable person would feel free to ignore the police and remain in his home. Therefore, Walters did not voluntarily turn himself in to the police; he only emerged from his home under circumstances of coercion, thus forcing us to conclude that the arrest occurred while he was still within his home. *See* United States v. Al-Azzawy, 784 F.2d 890 (9th Cir. 1985).

Because the arrest was not executed lawfully, Walters' statement to the police while riding to Barstow, California, should not have been admitted into evidence. The statement, "How many times did I have to let him hit me in the back" was significant to the State's case in chief in light of a paucity of other substantial evidence. No one besides Walters and Samson witnessed the murder and only Samson was seen displaying a knife prior to the murder. We are therefore compelled to conclude that the error was not harmless beyond a reasonable doubt.

Moreover, it is clear that under the factors enunciated in Brown v. Illinois, 422 U.S. 590 (1974), Walters' statement was not sufficiently an act of free will to purge the taint of his prior illegal arrest. Therefore, the *Brown* doctrine does not constitute a basis for salvaging the statement as competent trial evidence. *See also* United States v. Patino, 830 F.2d 1413, 1418 (7th Cir. 1987) (taint not purged where defendant continually in the company of at least one officer).

Second, we note for purposes incident to the prospect of a new trial that Walters' sentence was improperly enhanced. The controlling case law is found in Anderson v. State, 95 Nev. 625, 600 P.2d 241 (1979), in which we determined "that the participation of a defendant not actually in possession of the weapon by aiding and abetting the actual user in the unlawful use of the weapon, makes the former equally subject to the added penalty inflicted upon defendants who actually commit crimes through the use of deadly weapons." *Id.* at 629, 600 P.2d at 243.

In *Anderson,* we defined the requirements necessary to subject a defendant who aids and abets to the enhanced penalty resulting from use of a deadly weapon as follows:

[T]he possession necessary to justify statutory enhancement may be actual or constructive; it may be exclusive or joint. Constructive or joint possession may occur *only* where the unarmed participant has knowledge of the other offender's being armed, and where the unarmed offender has . . . the ability to exercise control over the [weapon].

*Id.* at 630, 600 P.2d at 244 (emphasis added).

The evidence strongly indicates that Walters did not have the possession necessary to justify the enhancement of his sentence. There was no evidence suggesting that Walters had any kind of constructive possession of the knife used to kill Ueckert. Moreover, the record does not supply a basis for inferring that Walters could have exercised control over the weapon. Therefore, it was clear error to statutorily enhance Walters' sentence.

Because we hold that a reversal and retrial are required as a result of the admission of Walters' inculpatory statement resulting from an unlawful arrest, we need not address Walters' remaining assignments of error. The district court erred in not granting Walters' post-conviction petition for relief; we therefore reverse the court's ruling and remand for further proceedings consistent with the views expressed in this opinion.