WILLIAM ANTHONY EDWARDS, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 20898

March 28, 1991 808 P.2d 528

*David Parraguirre,* Public Defender, *Jane McKenna,* Deputy Public Defender, Washoe County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Dorothy Nash Holmes,* District Attorney, *Gary Hatlestad,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, SPRINGER, J.:

On July 27, 1989, around 8:30 p.m., Sergeant Richard Ross and Lieutenant Timothy Gonyo of the Washoe County Consolidated Narcotics Unit were in the office of the Six Gun Motel in

Reno. They were talking with the manager to see if any known narcotics dealers had checked into the motel. Moments later, an unidentified woman entered the lobby, and explained that a gentleman was dressed in woman's clothing and exposing himself to her and her children.

Without questioning the woman further, Sgt. Ross and Lt. Gonyo walked to Room 155. As they did so, they saw appellant William Edwards through a window in the front of the motel room; he was stooped over with his right hand over his crotch area. At the time, Edwards was wearing women's undergarments: specifically, a camisole, nylon stockings, bra, garter belt, and panties.[1] The officers further noted that Edwards remained behind the curtain, and made no attempt to attract the attention of passers-by.

Sgt. Ross and Lt. Gonyo knocked on the door and identified themselves as sheriff's officers. Edwards then opened the door about ten to fourteen inches, at which time the officers noticed that Edwards' penis was exposed through a hole in the front of the panties that he was wearing. Edwards next quickly slammed the door, and told the officers to wait "just a minute." At this point, Sgt. Ross and Lt. Gonyo forced open the door and entered the room.

After the officers entered the room, they placed Edwards under arrest and charged him with indecent exposure. During the handcuffing procedure, both officers noticed that Edwards had "an oily substance" on his arms, hands, and wrists. The police officers also noticed the Edwards' eyes were watery and his pupils were dilated. Lt. Gonyo told Edwards that he (Edwards) looked like a "mess." Edwards agreed. Lt. Gonyo then asked Edwards if he had been using "anything," and Edwards replied that he had, about a half hour before.

Officer Greg Curry of the Reno Police Department was called to the Six Gun Motel and took Edwards into custody.[2] At this time, the police conducted a search of Edwards' room; this search netted a bag of unused hypodermic needles, and one used needle with blood on the tip.

Officer Curry then took Edwards to the Washoe County Jail, where a drug recognition test was performed. Following this test,

---

[1] One of the officers later testified that these items of clothing could be clearly identified only by standing two to three feet from the window.

[2] Following the arrest (but prior to the discovery that William had been using illegal drugs), Sgt. Ross and Lt. Gonyo turned the case over to the Reno Police Department, because, as Sgt. Ross put it, "Consolidated Narcotics generally doesn't become involved in . . . crimes other than narcotics."

Officer Curry advised Edwards of his *Miranda* rights and asked him (Edwards) if he had used any controlled substances. Edwards admitted that he had used methamphetamine. Officer Curry then requested that Edwards provide a urine sample; upon testing, this sample revealed the presence of amphetamine, methamphetamine, and marijuana.

In an information filed August 25, 1989, and an amended information filed October 30, 1989, Edwards was charged with one count of being under the influence of a controlled substance, methamphetamine, and one count of indecent exposure. The indecent exposure count alleged that Edwards,

> did willfully and unlawfully make an open and indecent or obscene exposure of his person to Sergeant RICHARD ROSS, . . . in that the defendant, while wearing women's undergarments with the front of the panties cut out and with his penis and genitals exposed, stood in front of an open door, thereby exposing himself to public view.

Prior to trial, Edwards petitioned for a writ of habeas corpus, and also moved to suppress the evidence obtained by the police that stemmed from the search of the motel room and subsequent investigation. Both motions were denied.[3] At trial, the jury then acquitted Edwards on the indecent exposure count, but convicted him on the charge of being under the influence of methamphetamine. Edwards was sentenced to three years in the Nevada State Prison, the term to run consecutively to any sentence that Edwards was currently serving. This appeal followed.

■■■■■■■■

Appellant's primary contention is that his arrest was made in violation of the United States Supreme Court's holding in Payton v. New York, 445 U.S. 573 (1980).[4] In *Payton,* the Court held that the fourth amendment prohibits police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine arrest. *Id.* at 576. The *Payton* Court then went on to hold that if police failed to obtain a warrant, then all

---

[3]Our review of the record indicates that although the court below never issued a formal ruling on William's motion to suppress, the district court did feel that it made such a ruling when it ruled on appellant's habeas petition. During argument on the habeas petition, Judge Adams noted that while a "motion to suppress would be the proper vehicle to address the . . . search, . . . under whatever legal vehicle this matter [is] addressed . . . if I concluded that the entry . . . was unlawful, then the evidence which was the result of their search would be vulnerable to suppression."

[4]As an initial matter, we note that respondent's procedural contentions are resolved by Koenig v. State, 99 Nev. 780, 672 P.2d 37 (1983), in which we held that where appellant presents an adequate record for reviewing serious constitutional issues, this court will address such claims on the merits.

evidence stemming from the arrest must be excluded. *Id.* at 603. Because the police officers in *Payton* had entered a private residence without a warrant (but with probable cause) to make a routine murder arrest, the Court held that the evidence seized on entry of the premises must be suppressed. *Id.*

We recently applied the *Payton* doctrine in Walters v. State, 106 Nev. 45, 786 P.2d 1202 (1990). In *Walters,* police arrested defendant in his home without a warrant, after receiving reliable information that defendant had committed a murder. *Id.* at 47, 786 P.2d at 1203. After his arrest, defendant was transported from Sandy Valley, Nevada to Barstow, California. *Id.* During the course of this ride, defendant was *Mirandized* and then made an incriminating statement that was subsequently used at trial. *Id.* We unanimously held that because the home arrest was illegal, and the subsequent statement to police officers was the fruit of the arrest, the statement should have been excluded. Therefore, we reversed. *Id.*

The above cases make clear that the fourth amendment requires the exclusion of all evidence obtained as the result of warrantless, non-emergency home searches. In United States v. Diaz, 814 F.2d 454 (7th Cir.), *cert. denied,* 484 U.S. 857 (1987), it was made equally clear that this rule also applies to hotel room searches. The *Diaz* court reasoned that under the relevant United States Supreme Court precedent, fourth amendment protections apply to individuals in hotel rooms as well as homes. *Id.* at 457-58 (citations omitted). The court then noted that the *Payton* opinion did nothing to alter this basic rule that ''a hotel room can be the object of fourth amendment protection as much as a home or an office.'' *Id.* at 458.

The state attempts to distinguish these cases by arguing that Edwards, by opening his door to police officers in the manner described above, committed a gross misdemeanor in a public place, and was therefore subject to immediate arrest. We disagree, however, because it is obvious from the record that Edwards remained inside the hotel room at all times and was at least partially hidden behind the door. Thus, Edwards never left his ''dwelling'' and, therefore, never forfeited the protections against intrusion provided by *Payton* and *Walters.*

The dissent argues at length that our decision should not be controlled by *Payton* and *Walters,* but instead by the recent case of New York v. Harris, 495 U.S. 14, 110 S.Ct. 1640 (1990). A comparison of *Harris* with the instant case, however, indicates

that this case is very easily distinguishable from *Harris*. In *Harris*, the Court held that evidence discovered outside the home is admissible, even if traceable to an illegal home arrest, so long as, prior to the entry of the home, police had probable cause to believe that the suspect committed the crime *for which he or she was being arrested*. The *Harris* Court reasoned that police gained no new information by virtue of the home arrest, since they (police) already had probable cause to believe that the suspect had committed the crime for which he was being arrested.

While the Supreme Court's logic in *Harris* that police gained little through the illegal home intrusion may have been plausible in *Harris*—where police already had much information pertaining to the crime charged—such logic is clearly inapplicable to the instant case. Here, police had no information of drug use prior to their entry into the hotel room, and thus *discovered a separate violation* solely through an illegal arrest. For this reason, any assertion that police received no advantage through the illegality becomes untenable. Consequently, *Harris* is inapplicable.

Having concluded that Edwards never entered a public place and that *Harris* is inapplicable, we are compelled to hold that all evidence of Edwards' drug use was improperly admitted at trial. Such a result is mandated by the *Payton* and *Walters* decisions because here, as in those cases, the challenged evidence was obtained as the result of a warrantless "home" arrest; Edwards did not consent to the search (in fact he attempted to prevent police from entering the room), and no emergency circumstances were present.[5] Indeed, the state conceded as much at oral argument when it admitted that, assuming Edwards never entered a public place, the arrest was clearly illegal. Therefore, all evidence traceable to this unlawful arrest should have been suppressed.

Accordingly, we hold that the district court erred when it denied appellant's motion to suppress the evidence seized as the result of this illegal arrest. For this reason appellant's conviction is reversed.

Rose and Young, JJ., concur.

Mowbray, C. J., with whom Steffen, J., joins, dissenting:

---

[5]The state does not contend that exigent circumstances were present, nor could it do so credibly in light of statements made in Welsh v. Wisconsin, 466 U.S. 740 (1984). In *Welsh,* the Court noted, in the context of an arrest for driving under the influence, that "application of the exigent circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense . . . has been committed." *Id.* at 753.

Respectfully, I dissent.

In Payton v. New York, 445 U.S. 573 (1980), the United States Supreme Court held that the Fourth Amendment of the United States Constitution prohibits the police from effecting a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest. Accordingly, since the police officers in *Payton* entered a private residence without a warrant to make their routine arrest, the evidence seized in the premises was suppressed. *Id.* at 603. The majority applies *Payton* to the facts of appellant Edwards' case and concludes that his conviction for illegal drug use cannot stand. However, *Payton* is not applicable to the analysis because of the unique facts of the case before us, and because of the rulings found in United States v. Santana, 427 U.S. 38 (1976), and New York v. Harris, 495 U.S. 14, 110 S.Ct. 1640 (1990).

## PROBABLE CAUSE

The threshold issue in this case asks whether there was probable cause to arrest Edwards for indecent exposure. Edwards' arrest in his motel room was clearly based upon probable cause: moments prior to the arrest, an unidentified woman entered the lobby of the motel and explained that a "gentleman was dressed in woman's clothing and [was] exposing himself to her and her children." The police officers then went towards the room and saw appellant Edwards through a window; he was wearing women's undergarments and was stooped over with his hand over his crotch. The police knocked on Edwards' door and Edwards opened the door, exposing his penis through a hole in the front of the undergarments. This constitutes probable cause to believe Edwards was guilty of indecent exposure, a gross misdemeanor, and we have previously so ruled on facts indistinguishable from the facts of this case. *See* Grover v. County of Clark, 97 Nev. 104, 625 P.2d 85 (1981). The next question asks whether the police violated Edwards' Fourth Amendment rights when they entered the motel room without Edwards' permission.

## UNITED STATES v. SANTANA

The United States Supreme Court, in United States v. Santana, 427 U.S. 38 (1976), has ruled that a "suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." *Id.* at 43. In *United States v. Santana,* police went to a suspect's home in order to make a warrantless felony arrest. Upon their arrival, the police located the suspect standing in the doorway of her home: officers testified that had the suspect taken one step forward she would

have been outside the doorway, and had she taken one step back she would have been in the vestibule. *Id.* at 40. The officers left their vehicle and approached the suspect, displaying their badges and shouting "police." The suspect retreated into her home where the police followed to make a warrantless arrest. In a search incident to the arrest, the police seized narcotics and marked money. *Id.* at 40-41.

The district court in *United States v. Santana* suppressed the evidence seized in the suspect's home, concluding that even though there was probable cause to arrest the suspect, the police were not justified in making a warrantless entry into her home to consummate the arrest. *Id.* The United States Supreme Court disagreed with the district court's conclusion.

First, the United States Supreme Court cited United States v. Watson, 423 U.S. 411 (1976), for the proposition that a warrantless arrest of an individual in a public place upon probable cause does not violate the Fourth Amendment. *United States v. Santana,* 427 U.S. at 42. The Court then concluded that the suspect in *United States v. Santana* was in a public place as she stood at the threshold of her door because she was not in an area where she had any expectation of privacy; the Court reasoned that " '[w]hat a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection.' Katz v. United States, 389 U.S. 347, 351 (1967)." *Id.* at 42. Next, the Court asked whether the suspect's act of retreating from a public place into a private place—her home, could thwart an otherwise proper arrest. The Court ruled it could not under the "hot pursuit" doctrine.[1] *Id.* Finally the Court concluded that once the suspect had been legally arrested in her home, the search that exposed the money and drugs was justified as a search incident to the arrest. *Id.* at 43.

Similarly the arrest of appellant Edwards in this case was based upon probable cause, as has already been discussed. Further, Edwards was in a public place at the time the police were about to arrest him: he could not harbor an expectation of privacy as he exposed his genitals in the threshold of the open doorway to his room. *Id.* at 42. Finally, once the police decided to arrest Edwards, he could not evade the arrest by retreating into a private place. The police, therefore, did not violate the strictures of the

---

[1]However, the Court noted that "hot pursuit" should not be interpreted to mean a "hue and cry 'in and about [the] public streets.' " United States v. Santana, 427 U.S. 38, 43 (1976). The Court concluded that "[t]he fact that the pursuit . . . ended almost as soon as it began did not render it any the less a 'hot pursuit' sufficient to justify the warrantless entry into [the suspect's] house." *Id.* The same reasoning would apply to the warrantless arrest of appellant Edwards.

Fourth Amendment by following Edwards into his room to consummate the arrest. *Id.*

After the officers entered the room, they placed Edwards under arrest and charged him with indecent exposure. During the handcuffing procedure, both officers noticed that Edwards' eyes were watery and his pupils were dilated. Edwards was asked if he had used "anything" and he responded that he had. Thereafter the police properly conducted a search incident to the arrest in the motel room, netting a bag of unused hypodermic needles and one used needle with blood on the tip. After he was taken to the station house, Edwards again admitted to using drugs.

The facts of Edwards' case, and the rule established in *United States v. Santana* make it clear that Edwards' arrest was not improper, nor was it inappropriate for the police to seize evidence in his room incident to the arrest. Likewise, Edwards' admissions subsequent to the arrest should not be suppressed because his arrest and the entry into his home was legal and appropriate under the strictures of the Fourth Amendment. Accordingly, *Payton* has absolutely no application to this case. The district court properly admitted the items seized in Edwards' room, as well as his admissions and drug tests.

## NEW YORK v. HARRIS

Even if the rule of *United States v. Santana* is ignored, Edwards' arrest was still appropriate, and his station house admission to drug use, as well as the drug test subsequent to that admission, were properly admitted into evidence by the district court.

The *Payton* ruling was clarified in *New York v. Harris,* where the United States Supreme Court distinguished between an illegal search of a suspect's home, and the illegal detention of the suspect. In *New York v. Harris,* the United States Supreme Court stated:

> Nothing in the reasoning of [*Payton*] suggests that an arrest in a home without a warrant but with probable cause somehow renders unlawful continued custody of the suspect once he is removed from the house. There could be no valid claim here that [the defendant] was immune from prosecution because his person was the fruit of an illegal arrest. United States v. Crews, 445 U.S. 463, 474, 100 S.Ct. 1244, 63 L.Ed. 2d 537 (1980). Nor is there any claim that the warrantless arrest required the police to release [the defendant] or that [the defendant] could not be immediately rearrested if momentarily released. Because the officers had probable cause to arrest [the defendant] for a crime, [he] was

not unlawfully in custody when he was removed to the station house, given Miranda warnings and allowed to talk. For Fourth Amendment purposes, the legal issue is the same as it would be had the police arrested [the defendant] on his door step, illegally entered his home to search for evidence, and later interrogated [the defendant] at the station house. Similarly, if the police had made a warrantless entry into [the defendant's] home, not found him there, but arrested him on the street when he returned, a later statement made by him after proper warnings would no doubt be admissible.

*New York v. Harris,* 495 U.S. at 18, 110 S.Ct. at 1643. Under the preceding analysis, the Court held, that "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of [*Payton*]." *New York v. Harris,* 495 U.S. at 21, 110 S.Ct. at 1644.

After he was arrested in his motel room, and after his admission, a search of Edwards' room netted a bag of hypodermic needles.[2] Under the rationale of *Payton,* and assuming arguendo that *United States v. Santana* is not controlling, the district court admittedly should have excluded the hypodermic needle evidence.

However, it is not clear whether Edwards' admission to drug use in the motel room should have been excluded by the district court. *New York v. Harris* did not reach this issue. Logically, however, applying the exclusionary rule to the first admission would make no sense. Under the rationale used in *New York v. Harris,* the confession in the room would not be the product of an illegal search of the room, but would be the result of the physical state and appearance of Edwards' person and an arrest based upon probable cause.[3]

[2]The sequence of these facts show that Edwards' physical condition—not the retrieval of the hypodermic needles—caused the police to question Edwards about his drug use.

[3]It is difficult to understand why this first confession would only be valid outside the room. This leads to the untenable result that shrewd police officers who violate the strictures of *Payton,* can legally obtain a confession from the suspect simply by waiting until the suspect is removed from the residence; nonetheless, dicta in *New York v. Harris* would indicate that the United States Supreme Court intends the suppression of in home interrogations in these cases. In *New York v. Harris,* the Court said, "[e]ven though we decline to suppress statements made outside the home following a *Payton* violation, the principal incentive to obey *Payton* still obtains: the police know that a warrantless entry will lead to the suppression of any evidence found or statements taken inside the home." *New York v. Harris,* 495 U.S. at 20, 110 S.Ct. at 1644.

Regardless, it is clear that Edwards' second admission to drug use and the drug test he received at the station house *should not be excluded from evidence*. At the time of his second admission and drug test, there is no question that Edwards was legally detained "[b]ecause the officers had probable cause to arrest [him] for *a crime. . . ." New York v. Harris*, 495 U.S. at 18, 110 S.Ct. at 1643. (Emphasis added.) This second admission was *not* the result of an illegal search of Edwards' hotel room; rather, the facts clearly indicate that it was the result of Edwards' physical state and police questioning related thereto. Assuming the police at the station house were not inept, they would have questioned Edwards about drug use (as did the two officers who first confronted Edwards in his room) because of his appearance and actions, and regardless of any prior admission or the hypodermic needles seized in his room.

Nonetheless, the majority argues that *New York v. Harris* is inapplicable to this case because Edwards was arrested for indecent exposure rather than illegal drug use. Therefore, the majority reasons the police discovered his illegal drug use "solely through an illegal arrest." The majority then concludes that "any assertion that police received no advantage through the illegality becomes untenable." Respectfully, I disagree with this reasoning.

The facts of this case indicate that the station house admission and the discovery of Edwards' illegal drug use did not arise from an illegal intrusion into Edwards' motel room; rather, the drug use was discovered because of Edwards' appearance and actions. Edwards' arrest for indecent exposure was likewise the result of his physical appearance. Thus, whether prior to the arrest or at the station house, the police had every right to question him about his behavior, appearance and attire, and in fact, it would have been inappropriate for the police not to do so.

Questions regarding his physical state, appearance and behavior led to an admission of illegal drug use while he was at the station house. Once Edwards made this admission, there was no reason to exclude the admission from the trier of fact simply because he was initially arrested for indecent exposure: to conclude otherwise implies that Edwards' admission of drug use is the fruit of an illegal detention of his person at the station house; however, under *New York v. Harris*, since Edwards' arrest was based upon probable cause, "[t]here could be no valid claim here that [the defendant] was immune from prosecution because his *person* was the fruit of an illegal arrest." *New York v. Harris*, 495 U.S. at 18, 110 S.Ct. at 1643. (Emphasis added.)

I likewise reject any contention that the police gained an advantage because the arrest was made in Edwards' room in violation of *Payton*. As the *New York v. Harris* court reasoned,

the legal issue in this case "is the same as it would be had the police arrested [the defendant] *on his door step,* illegally entered his home to search for evidence, and later interrogated [the defendant] at the station house." *New York v. Harris,* 495 U.S. at 18, 110 S.Ct. at 1643. Had Edwards walked into the hallway upon the initial confrontation with police, and had they arrested him there, the result in this case *would not change:* Edwards' face would have indicated drug use in the hallway as it did in the hotel room; his eyes would be no less glazed; his behavior would be just as strange; he would still be exposing his genitals; his attire would be the same; there would still be an oily substance on his arms. Thus, the police would have questioned Edwards about his appearance regardless of where he was arrested, and accordingly, there was no advantage gained by arresting Edwards in his room.

The weight of nonexcludable evidence produced at Edwards' trial overwhelmingly supports a finding of guilt: any error that may be found in the district court's decision to admit the hypodermic needles into evidence, or Edwards' first admission at the motel room, under a *New York v. Harris* analysis, is harmless error in light of the substantial evidence supporting his conviction. Weakland v. State, 96 Nev. 699, 615 P.2d 252 (1980).

## CONCLUSION

In sum, I am convinced that the United States Supreme Court's ruling in *Payton* has no application here: the police officers had probable cause to arrest Edwards, and Edwards had no legitimate expectation of privacy when he exposed himself in the doorway of his room; accordingly, he could not evade a legal arrest by retreating into his room under the rule set forth in *United States v. Santana.* Any evidence seized after Edwards' arrest in his motel room was properly seized incident to his arrest.

Second, even if the majority does not apply *United States v. Santana* to this case, the *Payton* rule should not be used to exclude the bulk of the evidence submitted at Edwards' trial because of the rationale in *New York v. Harris.*

Accordingly, I must dissent.