WAYNE EDWARD WALTERS, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 20028

March 5, 1992                                        825 P.2d 1237

*Beury & Schubel,* Carlsbad, California; *Frank J. Cremen,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Rex Bell,* District Attorney and *James Tufteland,* Chief Deputy and *Vicki Monroe,* Deputy, Clark County, for Respondent.

---

[3]The Honorable Carl J. Christensen, Judge of the Eighth Judicial District, was designated by the Governor to sit in the place of THE HONORABLE CHARLES E. SPRINGER, Justice. Nev. Const. art. 6, § 4.

## OPINION ON REHEARING

*Per Curiam:*

This is an appeal from an order of the district court denying appellant's petition for post-conviction relief.

Appellant Wayne Edward Walters was convicted following a jury trial of one count of second degree murder with use of a deadly weapon. Walters was sentenced to serve a prison term of life with the possibility of parole, enhanced by a consecutive term of life with the possibility of parole for use of a deadly weapon.

Following the dismissal by this court of Walters' direct appeal, Walters petitioned the district court for post-conviction relief. Following an evidentiary hearing, the district court denied the petition. This appeal followed.

On February 20, 1990, this court issued an opinion in this matter reversing the decision of the district court. Walters v. State, 106 Nev. 45, 786 P.2d 1202 (1990). On May 9, 1990, the state filed in this court a motion to recall the remittitur and a petition for rehearing. Walters opposed the motion and petition. On June 21, 1990, this court issued an order staying the proceedings against appellant in the district court. On October 25, 1990, we recalled our remittitur in this matter, and granted the state's petition for rehearing. We now issue this opinion in the place of our prior opinion.

### FACTS

The evidence at trial showed that on the night of May 12, 1985, Walters and his companion, Gregory Samson, had a heated argument with the victim, Douglas Ueckert, at the Tumbleweed Inn, a bar in Sandy Valley, Nevada. The three men and several companions left the bar to settle the dispute outside, at which time Samson displayed a knife. Eventually, the men returned to the bar, after apparently settling their differences. Soon, however, the argument flared up again. This time only Walters, Samson and Ueckert left the bar. A short time later, the victim's

wife, Diane Ueckert, found her husband in the parking lot bleeding from several stab wounds. Just prior to seeing her mortally wounded husband, Mrs. Ueckert encountered Samson on his motorcycle. Samson indicated that Ueckert had hit him in the head and hurt him. At the same time, Walters pulled up in a car and yelled to Samson, "let's go."

The next morning, without first obtaining a warrant, police officers from both Nevada and California converged on Walters' ranch, located on the California side of Sandy Valley, and arrested him. In accomplishing the arrest, the officers used a helicopter and, while circling Walters' home, used a bullhorn to order Walters and Samson to leave the house and walk to where other officers were waiting. Walters and his companion complied with the police directives, were given their *Miranda* warnings and were placed under arrest. Thereafter, Walters was transported to Barstow, California, by a police officer. During the course of that ride, which was approximately 100 miles, Walters made a statement to the effect, "How many times did I have to let him hit me in the back?"

Following a jury trial, Walters was found guilty of second degree murder and sentenced to life with the possibility of parole. He also received an identical consecutive sentence as an enhancement for using a deadly weapon. Walters challenges the district court's denial of his petition for post-conviction relief.

### DISCUSSION

In our previous opinion we concluded that two of the issues Walters raised in his petition for post-conviction relief had merit. First, we concluded that because Walters emerged from his home under circumstances of coercion, Walters was in effect arrested within his home. *See* United States v. Maez, 872 F.2d 1444, 1449-51 (10th Cir. 1989). Consequently, we concluded that Walters' inculpatory statement made in the police car as he was being transported to Barstow was the product of an arrest in his home without a warrant or exigent circumstances and should have been excluded from evidence under the holding of the United States Supreme Court in Payton v. New York, 445 U.S. 573 (1980). *See Maez,* 872 F.2d at 1456-57.

In *Payton* the Supreme Court held that the Fourth Amendment prohibits the police from effecting a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest. *Payton,* 445 U.S. at 602-03. On April 18, 1990, however, the Supreme Court issued a decision declining to apply the exclusionary rule to statements made outside a suspect's home following a warrantless arrest in the home. New York v. Harris, 495 U.S. 14, 110 S.Ct. 1640 (1990). The Supreme Court

explained that the rule in *Payton* was designed to protect the physical integrity of the home and not to grant criminal suspects protection from statements made outside their premises where the police have probable cause for arresting the suspect for committing a crime. *Id.* at ......, 110 S.Ct. at 1643.

The Supreme Court's decision in *Harris* prompted us to withdraw our earlier opinion in this matter. Because the facts of *Harris* are legally indistinguishable from the facts in this case, we now hold that the district court did not err in denying Walters' claim for post-conviction relief based on admission of the inculpatory statement.

Our second previous determination, that Walters' sentence was improperly enhanced, remains unchanged. The controlling case law is found in Anderson v. State, 95 Nev. 625, 600 P.2d 241 (1979), in which we determined "that the participation of a defendant not actually in possession of the weapon by aiding and abetting the actual user in the unlawful use of the weapon, makes the former equally subject to the added penalty inflicted upon defendants who actually commit crimes through the use of deadly weapons." *Id.* at 629, 600 P.2d at 243.

In *Anderson*, we defined the requirements necessary to subject a defendant who aids and abets to the enhanced penalty resulting from use of a deadly weapon as follows:

> [T]he possession necessary to justify statutory enhancement may be actual or constructive; it may be exclusive or joint. Constructive or joint possession may occur only where the unarmed participant has knowledge of the other offender's being armed, and where the unarmed offender has . . . the ability to exercise control over the [weapon].

*Id.* at 630, 600 P.2d at 244.

The evidence strongly indicates that Walters did not have the possession necessary to justify the enhancement of his sentence. There was no evidence suggesting that Walters had any kind of constructive possession of the knife used to kill Ueckert. Moreover, the record does not supply a basis for inferring that Walters could have exercised control over the weapon. Therefore, it was clear error to statutorily enhance Walters' sentence. Walters' remaining contentions lack merit.

Accordingly, we vacate appellant's consecutive life sentence for use of a deadly weapon. We affirm in all other respects the decision of the district court denying appellant's petition for post-conviction relief.[1]

---

[1]We lift the stay of proceedings in the district court imposed by our order of June 21, 1990.