OPINION
 

 Per Curiam:
 

 The primary issue in this appeal is whether the district court erred in refusing to instruct the jury what it was required to find to subject an unarmed offender to the deadly weapon enhancement in accordance with
 
 Anderson v. State.
 

 [1]
 

 Although appellant Jamón
 
 *205
 
 Brooks’ proposed deadly weapon enhancement instruction was a correct statement of the law, we take this opportunity to clarify the test used to determine when an unarmed offender is subject to the deadly weapon enhancement because the test in
 
 Anderson
 
 is based on the elements of constructive possession rather than “use” of a deadly weapon as provided in NRS 193.165. Specifically, we conclude that the proper focus is on the unarmed offender’s knowledge of the use of the weapon brandished by another principal. Due to this and another instructional error in this case, we reverse Brooks’ judgment of conviction and remand this matter to the district court for a new trial.
 

 FACTS
 

 Around noon on November 14, 2003, Christianne Davis opened her garage door and drove in, leaving the door open because she expected her husband to arrive shortly. As she reached for her purse and exited her car, she heard a man’s voice. When Davis turned around, she saw a man with a gun standing in her garage. The gunman demanded her purse, and Davis complied. The gunman ran toward a dark green Saturn blocking her driveway. Davis observed the Saturn’s driver briefly and noticed that he had braids and that his “profile was different.” The gunman jumped in the Saturn’s passenger side, and the car sped away. Davis memorized the car’s license plate number and called 911.
 

 Police officers responding to Davis’s 911 call obtained the address of the Saturn’s registered owner and proceeded to that location. After the first police officer arrived, appellant Jamón Brooks appeared, driving the Saturn. Brooks told Las Vegas Metropolitan Police Department Officer Gordon McGhie that he had possession of the car all day and no one else had driven it. Brooks led Officer McGhie to a dumpster containing Davis’s purse, which was missing $13 in cash.
 

 Officer McGhie escorted Brooks to the Clark County Detention Center for booking and advised Brooks of his rights pursuant to
 
 Miranda.
 

 [2]
 

 Brooks first denied any involvement in the robbery. Brooks eventually admitted that he was the driver of the getaway car, but he refused to name the gunman.
 

 Shortly after Brooks’ apprehension, Davis arrived, escorted by another officer, and identified Brooks as one of the offenders involved in the robbery. At trial, Davis identified Brooks as the driver of the getaway car.
 
 [3]
 

 A jury found Brooks guilty of robbery with the use of a deadly weapon and conspiracy to commit robbery. Thereafter, the district
 
 *206
 
 court sentenced Brooks to serve two consecutive terms of 26 to 120 months in prison for robbery with the use of a deadly weapon and a consecutive term of 12 to 48 months for conspiracy to commit robbery. This appeal followed.
 

 DISCUSSION
 

 Brooks challenges the district court’s refusal to give three jury instructions. A district court has broad discretion with respect to jury instructions, and absent an abuse of discretion or judicial error, this court will uphold a district court’s decision regarding a jury instruction.
 
 [4]
 

 Deadly weapon instruction
 

 Brooks argues that the district court erroneously refused to give an instruction offered by the defense regarding the circumstances in which an unarmed offender is subject to a deadly weapon enhancement. We agree that the district court did not accurately instruct the jury regarding the facts that the State must prove to subject an unarmed aider and abettor to a deadly weapon enhancement.
 

 Brooks offered an instruction based on language in our decisions in
 
 Anderson v. State
 

 [5]
 

 and
 
 Jones v. State.
 

 [6]
 

 Specifically, the proffered instruction provided that an unarmed offender is subject to the deadly weapon enhancement only if he had knowledge that the armed offender was armed and had the ability to exercise control over the weapon:
 

 An unarmed defendant, charged as an aider and abettor or co-conspirator, cannot be held criminally responsible for use of a deadly weapon unless he has actual or constructive control over the deadly weapon. An unarmed defendant does not have constructive control over a weapon unless the State proves he had knowledge the armed offender was armed and he had the ability to exercise control over the firearm.
 

 The State instead offered a more general instruction, also based on language in
 
 Anderson,
 
 that an unarmed offender’s participation by aiding or abetting the armed offender in the unlawful use of the weapon subjects the unarmed offender to the deadly weapon enhancement:
 

 The participation of a defendant not actually in possession of the weapon by aiding or abetting the actual user in the un
 
 *207
 
 lawful use of the weapon, makes a defendant equally subject to the added weapon enhancement available to the user who commits a crime through the use of a deadly weapon.
 

 After hearing argument regarding the instructions, the district court accepted the State’s instruction and rejected Brooks’ proffered instruction. In doing so, the district court acknowledged that Brooks’ proffered instruction used language from
 
 Anderson
 
 and
 
 Jones
 
 but expressed doubt that this court intended to require the State to prove that the unarmed offender had the ability to exercise control over the weapon. The district court reasoned that this requirement would lead to absurd results and that the crux of the issue is whether the unarmed offender had knowledge that a weapon would be used during the commission of the underlying offense. The district court thus instructed the jury as provided in the State’s instruction set forth above and additionally instructed the jury that “[i]f more than one person commits a robbery, and one of them uses a deadly weapon in the commission of that robbery, each may be convicted of Robbery With Use of a Deadly Weapon, even though he did not personally himself use the weapon.’ ’
 

 Despite the district court’s concerns with Brooks’ proffered instruction, the constructive possession test in Brooks’ proffered instruction is an accurate statement of current Nevada law. It is based on
 
 Anderson,
 
 which this court has cited as defining “the requirements necessary to subject a defendant, who aides and abets the user of a deadly weapon, to an enhanced penalty.”
 
 [7]
 
 And this court has cited and applied Anderson’s constructive possession test in four published decisions addressing an unarmed offender’s liability for a sentence enhancement under NRS 193.165.
 
 [8]
 
 Accordingly, the district court should have instructed the jury consistent with Nevada law. And given the evidence presented in this case, we cannot conclude that this error is harmless.
 
 [9]
 

 While the proffered instruction correctly states current Nevada law, we take this opportunity, given the need for a new trial in this case, to address and clarify the circumstances in which an unarmed offender is subject to the deadly weapon enhancement. We conclude that the proper focus is on the unarmed offender’s knowledge of the use of the weapon brandished by another principal.
 

 
 *208
 
 Under NRS 193.165(1), any person who “uses” a deadly weapon in the commission of a crime is subject to a sentence enhancement. The statute expressly precludes imposition of the enhancement with respect to certain crimes,
 
 [10]
 
 but as we recognized in
 
 Anderson,
 
 the statute does not clearly preclude imposition of the enhancement upon an unarmed offender “whose criminal acts were accomplished with the aid” of a deadly weapon held “by an accomplice and equally culpable principal.”
 
 [11]
 
 As a result, in
 
 Anderson
 
 this court accepted the general proposition, asserted by the State, that an unarmed offender’s participation by aiding and abetting an armed offender “in the unlawful use of the weapon, makes the [unarmed offender] equally subject to the added penalty inflicted upon defendants who commit crimes through the use of deadly weapons.”
 
 [12]
 
 We reasoned that this general proposition was consistent with “the legislature’s concern regarding the increased use of deadly weapons in the commission of crimes and its belief that such proscription will serve to deter persons from using weapons during the perpetration of certain crimes, in the hope that the possibility of death and injury will be reduced.”
 
 [13]
 

 In applying the general proposition accepted in
 
 Anderson,
 
 this court set forth scenarios in which the sentence enhancement could properly be imposed on an unarmed offender “whose criminal acts were accomplished with the aid of a firearm or other deadly weapon which was held ... by an accomplice and equally culpable principal.”
 
 [14]
 
 Initially, this court explained that “[w]hen one of two robbers holds a victim at bay with a gun and the other relieves the victim of his properties, or . . . the unarmed assailant has knowledge of the use of the gun and by his actual presence participates in the robbery, the unarmed offender benefits from the use of the other robber’s weapon, adopting derivatively its lethal potential.”
 
 [15]
 
 The focus of these scenarios is on whether the unarmed offender had knowledge of the use of the weapon and his criminal acts were facilitated by the use of the weapon. But this court’s analysis did not end there. Instead, the
 
 Anderson
 
 court went on to explain that its conclusion was consistent with Nevada cases interpreting the term “possession.”
 
 [16]
 
 In particular, because those cases require control rather than actual or physical possession, this court reasoned that “the possession necessary to justify statutory enhancement may be actual or constructive; it may be exclusive or
 
 *209
 
 joint.”
 
 [17]
 
 The court further explained that constructive or joint possession for purposes of the deadly weapon enhancement requires that “the unarmed participant has knowledge of the other offender’s being armed, and ... the ability to exercise control over” the weapon.
 
 [18]
 
 This constructive possession test has been the primary focus of our published decisions since
 
 Anderson
 
 that have addressed an unarmed offender’s liability for a deadly weapon enhancement:
 
 Moore v. State,
 

 [19]
 

 Walters v. State,
 

 [20]
 

 Jones v. State,
 

 [21]
 

 and
 
 Mitchell v. State.
 

 [22]
 

 As noted above, Brooks based his proffered instruction on
 
 Anderson’s
 
 constructive possession test.
 

 The
 
 Anderson
 
 constructive possession test, however, poses two problems. First, the deadly weapon enhancement statute does not require “possession” of a deadly weapon; it requires “use” of a deadly weapon in the commission of an offense.
 
 [23]
 
 Accordingly, it appears that
 
 Anderson’s
 
 reliance on constructive possession was not warranted by the statutory language. Second, the control prong of the constructive possession test can lead to absurd results depending on whether the unarmed offender was in close enough physical proximity to the armed offender to exert verbal or physical control over the weapon.
 
 [24]
 
 For these reasons, we reject the con
 
 *210
 
 structive possession test set forth in
 
 Anderson
 
 and its progeny for purposes of determining whether an unarmed offender is subject to an enhanced sentence for an accomplice’s use of a deadly weapon.
 

 To determine whether an unarmed offender is subject to an enhanced sentence under NRS 193.165, the relevant inquiry is whether the unarmed offender “used” the deadly weapon in the commission of the offense. As this court has explained, the term “use” in NRS 193.165(1) “connotes ‘to put into action or service’ and ‘to carry out a purpose or action by means of.’ ”
 
 [25]
 
 Consistent with this definition and the general analysis in
 
 Anderson,
 
 we conclude that an unarmed offender “uses” a deadly weapon and therefore is subject to a sentence enhancement when the unarmed offender is liable as a principal for the offense that is sought to be enhanced,
 
 [26]
 
 another principal to the offense is armed with and uses a deadly weapon in the commission of the offense, and the unarmed offender had knowledge of the use of the deadly weapon.
 
 [27]
 

 Here, the State presented evidence that Brooks drove the vehicle to and from Davis’s home and knew the location of Davis’s discarded purse. However, it is unclear whether Brooks had knowledge of the other offender’s use of the gun. Applying the clarified test we adopt today, on retrial, the State must not only prove that Brooks is liable as a principal for the robbery and that another principal to the robbery was armed with and used a deadly weapon in the commission of the robbery, the State must also prove that Brooks had knowledge of the use of the deadly weapon.
 

 
 *211
 

 Conspiracy instruction
 

 Brooks next sought and was refused an instruction advising the jury that absent an agreement to cooperate in achieving a criminal purpose, mere knowledge of, acquiescence in, or approval of that purpose does not establish conspiracy.
 
 [28]
 
 A defendant has the right to have the jury instructed on a theory of the case as disclosed by the evidence, no matter how weak or incredible that evidence may be, regardless of who introduces the evidence and what other defense theories may be advanced.
 
 [29]
 
 Although the jury was instructed on conspiracy, ‘“[a] positive instruction as to the elements of the crime does not justify refusing a properly worded negatively phrased “position” or “theory” instruction.’ ”
 
 [30]
 
 A proposed instruction may not be refused because the legal principle it espouses may be inferred from other instructions.
 
 [31]
 
 “Jurors should neither be expected to be legal experts nor make legal inferences with respect to the meaning of the law.”
 
 [32]
 
 Rather, jurors should be advised of relevant legal principles through “accurate, clear, and complete instructions specifically tailored to the facts and circumstances of the case.”
 
 [33]
 

 Here, Brooks’ theory of defense was that he was present at the robbery as the driver of the getaway car but did not know a robbery was going to take place and did not conspire to commit it. There was little evidence in the record that Brooks conspired to commit the robbery, other than inferences that could be drawn from his presence at the scene. We agree with Brooks that he was entitled to this jury instruction because it was an accurate statement of the law and the evidence adduced at trial could support his theory that he only learned of the robbery after it occurred. We are unable to conclude that the error was harmless beyond a reasonable doubt, as the jury may not have convicted Brooks of conspiracy to commit robbery had it been presented with his proposed instruction.
 
 [34]
 

 
 *212
 

 Remaining claims
 

 Brooks also raised the following claims: the district court erred by refusing a defense instruction on accessory after the fact under NRS 195.030, the prosecutor misstated facts in closing argument, the district court failed to conduct a meaningful hearing on his motion to be appointed a new attorney, he was denied his right to present a meaningful defense, he was denied his right of confrontation when the district court limited his cross-examination of Davis, and the show-up identification procedure the police used with Davis was unduly suggestive and rendered her identification of him as one of the perpetrators unreliable. Because we conclude that Brooks is entitled to a new trial based upon the aforementioned instructional errors, we decline to address these matters at this time.
 
 [35]
 

 CONCLUSION
 

 We conclude that the district court abused its discretion in refusing to give Brooks’ proposed instruction respecting the elements necessary to subject an unarmed offender to a deadly weapon enhancement. Further, we clarify that an unarmed offender “uses” a deadly weapon and therefore is subject to a sentence enhancement when the unarmed offender is liable as a principal for the offense that is sought to be enhanced, another principal to the offense is armed with and uses a deadly weapon in the commission of the offense, and the unarmed offender had knowledge of the use of the deadly weapon. In addition, we conclude that the district court erred in refusing to give Brooks’ proposed instruction on conspiracy. Because we conclude that the district court’s refusal to give these instructions was not harmless beyond a reasonable doubt, we reverse Brooks’ judgment of conviction and remand this matter to the district court for a new trial.
 

 [1]
 

 95 Nev. 625, 600 P.2d 241 (1979).
 

 [2]
 

 Miranda
 
 v.
 
 Arizona,
 
 384 U.S. 436 (1966).
 

 [3]
 

 Davis’s pretrial identification of Brooks as the getaway driver was disputed at trial.
 

 [4]
 

 Nelson
 
 v.
 
 State,
 
 123 Nev. 217, 170 P.3d 517 (2007).
 

 [5]
 

 95 Nev. 625, 600 P.2d 241.
 

 [6]
 

 111 Nev. 848, 899 P.2d 544 (1995).
 

 [7]
 

 Id.
 

 [8]
 

 Mitchell
 
 v.
 
 State,
 
 114 Nev. 1417, 1430, 971 P.2d 813, 822 (1998),
 
 overruled on other grounds by Sharma v. State,
 
 118 Nev. 648, 56 P.3d 868 (2002);
 
 Jones,
 
 111 Nev. at 852, 899 P.2d at 546;
 
 Walters
 
 v.
 
 State,
 
 106 Nev. 45, 49, 786 P.2d 1202, 1204 (1990),
 
 superseded on other grounds,
 
 108 Nev. 186, 825 P.2d 1237 (1992);
 
 Moore v. State,
 
 105 Nev. 378, 382, 776 P.2d 1235, 1238 (1989),
 
 overruled on other grounds by Peck v. State,
 
 116 Nev. 840, 7 P.3d 470 (2000),
 
 overruled on other grounds by Rosas
 
 v.
 
 State,
 
 122 Nev 1258, 147 P.2d 1101 (2006).
 

 [9]
 

 See Allred
 
 v.
 
 State,
 
 120 Nev. 410, 415, 92 P.3d 1246, 1250 (2004).
 

 [10]
 

 NRS 193.165(3).
 

 [11]
 

 Anderson
 
 v.
 
 State,
 
 95 Nev. 625, 630, 600 P.2d 241, 244 (1979).
 

 [12]
 

 Id.
 
 at 629, 600 P.2d at 243.
 

 [13]
 

 Id.
 
 at 630, 600 P.2d at 244.
 

 [14]
 

 Id.
 

 [15]
 

 Id.
 

 [16]
 

 Id.
 

 [17]
 

 Id.
 

 [18]
 

 Id.
 

 [19]
 

 105 Nev. 378, 382, 776 P.2d 1235, 1238 (1989) (concluding that unarmed offender had constructive possession of deadly weapon — a rock — when unarmed offender had knowledge of armed offender’s possession of the rock and “had the ability to exercise control, even if only to verbally deter [the armed offender] from throwing the rock”),
 
 overruled on other grounds by Peck
 
 v.
 
 State,
 
 116 Nev. 840, 7 P.3d 470 (2000),
 
 overruled on other grounds by Rosas
 
 v.
 
 State,
 
 122 Nev. 1258, 147 P.3d 1101 (2006).
 

 [20]
 

 106 Nev. 45, 49, 786 P.2d 1202, 1204 (1990) (concluding that there was no evidence that unarmed defendant “had any kind of constructive possession of the knife” or that he “could have exercised control over the weapon”),
 
 superseded on other grounds,
 
 108 Nev. 186, 825 P.2d 1237 (1992).
 

 [21]
 

 111 Nev. 848, 852, 899 P.2d 544, 546 (1995) (concluding that unarmed defendant had “the requisite knowledge and control necessary for constructive possession of a weapon” when defendant participated in offense, was present when two of his companions brandished firearms, and rummaged through victim’s property while companion controlled victim by holding him at gunpoint, but not clearly explaining how defendant had ability to exercise control over weapon).
 

 [22]
 

 114 Nev. 1417, 1430, 971 P.2d 813, 822 (1998) (concluding, without much analysis, that “[d]ue to [the defendant’s] participation in an armed robbery, with or without his physical possession of a gun, the jury could have found that [he] had constructive possession of a weapon under
 
 Anderson”), overruled on other grounds by Sharma v. State,
 
 118 Nev. 648, 56 P.3d 868 (2002).
 

 [23]
 

 NRS 193.165(1).
 

 [24]
 

 See Moore,
 
 105 Nev. at 382, 776 P.2d at 1238 (observing that unarmed offender “had the ability to exercise control, even if only to verbally deter [the armed offender] from throwing the rock”).
 

 [25]
 

 Moore v. State,
 
 117 Nev. 659, 662, 27 P.3d 447, 449 (2001) (citation omitted).
 

 [26]
 

 See
 
 NRS 195.020 (“Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who, directly or indirectly, counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor is a principal, and shall be proceeded against and punished as such.”).
 

 [27]
 

 Anderson v. State,
 
 95 Nev. 625, 630, 600 P.2d 241, 244 (1979) (“When one of two robbers holds a victim at bay with a gun and the other relieves the victim of his properties, or, as in the instant case, the unarmed assailant has knowledge of the use of the gun and by his actual presence participates in the robbery, the unarmed offender benefits from the use of the other robber’s weapon, adopting derivatively its lethal potential.”);
 
 see also Jones
 
 v.
 
 State,
 
 111 Nev. 848, 853, 899 P.2d 544, 546 (1995) (upholding enhancement when unarmed offender had knowledge of weapons and “used the weapons brandished by others to accomplish the crimes for which he was convicted” in that he was able to rummage through victim’s property while his companion held victim at gunpoint).
 

 [28]
 

 See Doyle v. State,
 
 112 Nev. 879, 894, 921 P.2d 901, 911 (1996) (citing
 
 State v. Arredondo,
 
 746 P.2d 484, 487 (Ariz. 1987)),
 
 overruled in part on other grounds by Kaczmarek v. State,
 
 120 Nev. 314, 91 P.3d 16 (2004).
 

 [29]
 

 Rosas
 
 v.
 
 State,
 
 122 Nev. 1258, 1265-66, 147 P.3d 1101, 1107 (2006).
 

 [30]
 

 Crawford v. State,
 
 121 Nev. 744, 753, 121 P.3d 582, 588 (2005) (quoting
 
 Brooks
 
 v.
 
 State,
 
 103 Nev. 611, 614, 747 P.2d 893, 895 (1987)).
 

 [31]
 

 Id.
 
 at 754, 121 P.3d at 588.
 

 [32]
 

 Id.
 

 [33]
 

 Id.
 

 [34]
 

 See Allred
 
 v.
 
 State,
 
 120 Nev. 410, 415, 92 P.3d 1246, 1250 (2004).
 

 [35]
 

 We note that to the extent that Brooks sought an instruction on accessory after the fact under NRS 195.030 as a lesser offense of which he could be convicted, he will be entitled to that instruction at the new trial only if he can demonstrate that accessory after the fact is a lesser-included offense.
 
 See Rosas
 
 v.
 
 State,
 
 122 Nev. 1258, 147 P.3d 1101 (2006);
 
 Peck
 
 v.
 
 State,
 
 116 Nev. 840, 7 P.3d 470 (2000),
 
 overruled in part on other grounds by Rosas,
 
 122 Nev. 1258, 147 P.3d 1101.